685 So.2d 889 (1996)
BROWARD COUNTY, a political subdivision of the State of Florida, Appellant,
v.
Richard A. LaPOINTE and Florian G. LaPointe, his wife, Richard A. LaPointe, Trustee U/A dated December 6, 1984, Appellees.
Nos. 94-2888, 95-0221.
District Court of Appeal of Florida, Fourth District.
November 13, 1996.
Rehearing and Certification of Questions Denied January 24, 1997.
*890 John J. Copelan, Jr. of Office of the County Attorney; Angela C. Flowers and Robert N. Sechen of Kubicki Draper, Fort Lauderdale, for appellant.
Amy Brigham Boulris and Alan Deserio of Brigham, Moore, Gaylord, Schuster & Merlin, Miami, for appellees.
GROSS, Judge.
This case arises out of an eminent domain proceeding necessitated by the expansion of the Fort Lauderdale-Hollywood International Airport. Appellees Richard and Florian LaPointe owned property near the airport. They first learned of Broward County's plan to condemn the property in February, 1989, and they hired the law firm of Brigham, Moore, Gaylord, Schuster & Merlin ("Brigham Moore") to represent them.
In November, 1989, the County extended an offer to purchase approximately 8.2 acres of the LaPointe's property. The offer was in the form of a proposed contract for sale and purchase, in which the County agreed to pay $2,404,000 subject to various stated conditions. A condition located at Section 22.1 provided that
in the event environmental contamination of the Property has resulted or is discovered, the COUNTY, at its sole option, may elect to terminate this Contract without further liability. Should the COUNTY elect not to terminate this Contract, COUNTY shall be entitled to an appropriate adjustment in the purchase price based upon the estimated cost of clean up of the environmental contamination.
The LaPointes rejected the offer and on December 4, 1989, the County filed a condemnation suit.
During the first half of 1990, both sides retained environmental experts to assess the property. In June, the County's experts reported the presence of vinyl chloride in the groundwater in excess of standards set by the Department of Environmental Regulation. By June, 1991, a more thorough investigation had been completed and the County's experts estimated the cost of additional testing and remediation at $1,147,267. On June 14, the County and the LaPointes entered into an agreed order of taking which allowed title to pass to the county and fixed a good faith estimate of value at $2,364,500. The order required that $1,147,267 of this *891 amount be placed into an escrow account to be used by the LaPointes to conduct further environmental testing and to develop, implement and maintain a "system to remediate [the property], if required by the agencies of government having jurisdiction." The order also indicated that the LaPointes were "entitled to deal with all regulatory agencies regarding the possible existence of contamination on these properties." Pursuant to this provision, the LaPointes retained the law firm of Josias & Goren to work with their environmental consultants and the regulatory agencies toward a resolution of the contamination problem.
To prepare for trial, both sides obtained appraisals. The LaPointes' expert estimated that the property was worth over $5,000,000. The County's expert valued the property at $3,011,000, but opined that full compensation was only $211,000, after a $2,800,000 deduction for environmental contamination. One litigation strategy pursued by the LaPointes was to demonstrate that the County was liable for environmental damages, since its property was the source of any contamination.[1]
The case settled in mediation and a stipulated final judgment incorporating the settlement terms was entered on March 17, 1994. The settlement provided that the LaPointes would recover $3,704,480 from the County as full compensation for their property. The settlement included other incentives, including (1) the receipt of back rent from a billboard tenant; (2) the right to lease back a portion of the condemned property to erect other billboards; (3) an agreement by the County that if a government agency ever required it to clean up the part taken, that it would install a remediation system in a location where it could potentially cure both the condemned property and the adjacent remainder; and (4) the court's reservation of jurisdiction over the parties' agreement concerning attorney's fees and costs:
The amount of all reasonable costs and attorneys' fees, including all costs of environmental contamination issues, shall be determined, as soon as possible, by the court in a subsequent order or orders, upon appropriate motion and notice.
After extensive evidentiary hearings, the trial court entered detailed orders on attorney's fees and costs. The judge found that Brigham Moore had reasonably spent 2,400 hours in defense of the action at a reasonable blended rate of $250 per hour, giving a lodestar amount of $600,000. The trial judge ruled that the case was an exceptional one, primarily because of the
County's position that the value of the owners' property was adversely affected to the extent of $2,800,000 because of environmental contamination when the owners' position at trial was that the vinyl chloride on the County's property had contaminated the owners' property.
The court noted that the issues in the case were "novel and complex" and that the benefits achieved for the owners by Brigham Moore warranted the application of a success adjustment.
To quantify the benefit, the court adjusted the county's original offer of $2,404,000 by subtracting $1,147,267, the original cost of cleanup estimated by the County's experts. The court then subtracted the adjusted offer ($1,256,753) from the final award of $3,704,000, arriving at a benefit achieved of $2,447,267. To this amount, the court added the monetary value of the other settlement provisions ($1,129,000), resulting in a total value of benefits to the LaPointes of $3,576,267. The judge awarded a ten per cent success bonus of the benefits obtained ($357,626). Adding the success bonus to the lodestar, the court found that a reasonable fee for Brigham Moore was $957,626.
The County first challenges the method used by the trial court to arrive at the monetary benefits obtained by the LaPointes' attorneys. The county argues that the true monetary benefit was $1,300,000the final *892 settlement ($3,704,000) less the original offer ($2,404,000), without any adjustment for the cost of the environmental clean up.
Under the applicable statute, one of the factors the court was required to consider in assessing attorney's fees was the "[b]enefits resulting to the client from the services rendered." § 73.092(1), Fla.Stat. (1989). A trial court's evaluation of the statutory criteria in a given case may be set aside only if the trial court abused its discretion in making a fee award. Division of Admin., State Dep't of Transp. v. Denmark, 354 So.2d 100, 102-03 (Fla. 4th DCA 1978). One method of quantifying monetary benefits is to determine the difference between the condemning authority's initial offer for land taken and the ultimate award.[2]See, e.g., Florida Power and Light Co. v. Flichtbeil, 475 So.2d 1250, 1251 (Fla. 5th DCA 1985), review denied, 486 So.2d 597 (Fla.1986). A proper gauge of benefits is not based solely on a yardstick comparison of raw numbers but on a realistic evaluation of the economic ramifications to the landowner of all the provisions of the original offer.
The County's 1989 contract proposal was not a hard offer where $2,404,000 would have passed to the LaPointes upon the transfer of title. The dollar offer was subject to an important condition. Had the LaPointes accepted the County's proposal, they would have been locked into a sale with a price ceiling, subject to an unlimited downward adjustment for the estimated cost of clean up of environmental contamination. For the LaPointes to intelligently decide whether or not to accept the offer, they had to value the potential cost of clean up. During this litigation, estimates of remediation costs approached $3,000,000. It was not an abuse of discretion for the trial judge to make an adjustment using the $1,147,267 figure that had been developed by the County early in the litigation.
We also find no abuse of discretion in the court's quantification of the non-monetary benefits achieved for the client. The ultimate award of fees was within the range of the testimony at trial, which ranged from $750,000 opined by the county's expert to $1,355,415 testified to by a LaPointe witness. We find no reversible error in the trial court's fee award to Brigham Moore.
The County next challenges the fees awarded to the law firms of Josias & Goren and Blank, Rigsby & Meenan. The court awarded fees for these firms' representation of the LaPointes in the "administrative and regulatory process," the negotiations and dealings with the Department of Environmental Regulation to obtain a favorable consent order for the landowners which would limit the responsibility for cleaning up the contamination. We agree with the county's contention that these two awards of attorney's fees were in error, since they were outside the terms of the settlement agreement.
Because the construction of a contract is a matter of law, this court may properly reassess the meaning of the settlement agreement and arrive at a conclusion different from that of the trial court. Leseke v. Nutaro, 567 So.2d 949, 950 (Fla. 4th DCA 1990); Angell v. Don Jones Ins. Agency, Inc., 620 So.2d 1012, 1014 (Fla. 2d DCA 1993). Since there is no facial ambiguity in the portion of the agreement at issue, the provision must be afforded its plain meaning. E.g., Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc., 609 So.2d 66 (Fla. 4th DCA 1992). The parties' settlement agreement provided that the court was to reserve jurisdiction over the "amount of all reasonable costs and attorney's fees, including all costs of environmental contamination issues." The agreement's choice of words draws a distinction between "costs" and "attorney's fees." The first portion of the phrase uses both terms, while the modifying clause refers only to "costs." This omission *893 of "attorney's fees" is significant. We reject the LaPointe's argument that the parties used the term "costs" as it is used in section 73.091, Florida Statutes (1989), to include attorney's fees. This construction would make the settlement agreement's use of the term "attorney's fees" redundant. We therefore construe the settlement agreement to allow reimbursement for the sizeable amount of costs incurred in dealing with environmental contamination issues, but not to include attorney's fees the LaPointes incurred in the "administrative and regulatory process."
The County next challenges the award of fees to Dr. Alexander Padva, an environmental researcher who was hired as both a litigation consultant and an expert witness. The trial court awarded the full amount of Padva's bill, without any breakdown as to what the services involved. That portion of Padva's bill attributable to services as a litigation consultant is not recoverable. State Dep't of Transp. v. Woods, 633 So.2d 94 (Fla. 4th DCA 1994). On remand, the trial court must determine what portion of Padva's fee can be allocated to the formation of an expert opinion which related to the valuation of the property.
As to the remaining fee and expert witness awards challenged by the County, we find no abuse of discretion under the unique facts of this case.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
DELL and STEVENSON, JJ., concur
NOTES
[1] This case preceded the decision in Finkelstein v. Department of Transp., 656 So.2d 921 (Fla. 1995), which held that evidence of environmental contamination was relevant in an eminent domain proceeding only insofar as it impacted the market value of the property. The supreme court declined to reach the issue of whether remediation costs would be relevant and admissible in a valuation proceeding.
[2] The 1989 version of the statute did not define "benefits." A 1990 amendment defined "benefits" as,

the difference, exclusive of interest, between the final judgment or settlement and the last written offer made by the condemning authority before the defendant hires an attorney. If no written offer is made by the condemning authority before the defendant hires an attorney, benefits must be measured from the first written offer after the attorney is hired.
§ 73.092(1)(a), Fla.Stat. (1995).