720 So.2d 1125 (1998)
STATE of Florida, DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Robert J. SKIDMORE, Appellee.
No. 97-4219.
District Court of Appeal of Florida, Fourth District.
November 4, 1998.
Rehearing Denied December 21, 1998.
*1126 Pamela S. Leslie and Marianne A. Trussell, Tallahassee, for appellant.
Jack J. Aiello and Leigh E. Dunston of Gunster, Yoakley, Valdes-Fauli & Stewart, P. A., West Palm Beach, for appellee.
POLEN, Judge.
The Florida Department of Transportation ("DOT") timely appeals three final orders awarding $900,000 in attorney's fees, $52,180 in taxable costs, and $56,400 in expert appraisal costs in favor of Robert Skidmore ("Skidmore"). With the exception of certain taxable costs awarded, we reverse the orders.
This case arises out of an eminent domain proceeding necessitated by the building of the Roosevelt Bridge in Stuart. Skidmore owned several parcels of land near the bridge. He first learned of DOT's plan to condemn four of those parcels in February, 1992. Those parcels included the Doss Pier and, according to DOT, several thousand square feet of illegally filled sovereignty submerged lands. DOT initially offered Skidmore $285,500 for the parcels at issue. Rejecting the offer, Skidmore hired the law firm of Gunster, Yoakley, Valdes-Fauli & Stewart, P.A. ("Gunster Yoakley") to represent him.
In December, 1992, DOT filed eminent domain proceedings, but dropped the issue of the filled lands. In February, 1993, DOT issued its Order of Taking irrespective of the filled lands and deposited $883,950, its good faith estimate of value, into the court registry.
By 1994, DOT changed its strategy. In July, 1994, one month before trial was supposed to begin, it re-raised the filled lands issue in an appraisal report, and also decided to rebuild Doss Pier instead of taking it on a fee simple basis. As a result, DOT's proposed compensation to Skidmore decreased from $883,950 to $205,000. Based on these *1127 changes in strategy, which Skidmore later unsuccessfully fought through a motion in limine, the court continued trial.
In March, 1995, the trial court entered an order to show cause why the case should not be dismissed for failure to join the Florida Department of Environmental Protection ("DEP") as an indispensable party with respect to the filled lands issue. Skidmore then filed a third party complaint against DEP and the Trustees of the Internal Improvement Fund. In June, 1996, DEP and Skidmore settled their dispute, whereby Skidmore acquired clear title to 13,000 square feet of the 22,000 square feet of land DOT claimed was illegally filled. After a five-day jury trial between DOT and Skidmore in May, 1997, the jury awarded Skidmore $810,750 for the overall taking, requiring Skidmore to return roughly $73,000 of DOT's good faith deposit.
In October, 1997, the trial court held a three-day evidentiary hearing on Skidmore's motions for attorney's fees, expert fees, and costs. It was undisputed that Skidmore's total monetary benefits were $525,250, the difference between the jury verdict of $810,750 and DOT's initial offer of $285,500. Skidmore's expert appraiser, Burl Wilson, testified Skidmore also received at least $700,000 in nonmonetary benefits, consisting primarily of the reconstruction and return of the Doss Pier. He also cited other, unquantifiable nonmonetary benefits, including promises made by DOT to Skidmore at trial regarding allowable uses under the Bridge and within its easement across the river.
DOT argued the Skidmore's attorneys spent an excessive amount of time (3,974.5 hours) on this case. In contrast, Skidmore's expert, Robert Byrne, testified that the total number of hours of attorney's time was reasonable, and, at a blended hourly rate of $200, yielded a lodestar figure of $794,900. He also opined that the 1,184.6 hours of certified legal assistant time was reasonable and, when multiplied by a standard hourly rate of $90, yielded $106,560 in additional fees. Thus, he opined that the total of the combined hours and rates, $901,460, which he rounded to $901,000, was reasonable. Byrne testified that, in arriving at this amount, he also considered the complexity of the case, skill involved, and his opinion that Skidmore received a $700,000 nonmonetary benefit from the rebuilding of the Doss Pier.
DOT's expert, Weiner, disagreed with Byrne's approach and figures. Weiner testified that a reasonable fee in this case was $423,000. He arrived at this amount by first taking 33% of the benefit, multiplying that number by two, adding the lodestar amount, which he determined was $919,000, and dividing that sum by three. He also opined that Skidmore did not receive any nonmonetary benefits from the giving back of Doss Pier because Skidmore fought DOT's plans to replace the pier. In any event, he testified that $423,000 was reasonable because it constituted 80% of $525,250, which he believed was Skidmore's total benefit.
Skidmore also sought $54,062.50 in fees and $584.76 in costs for work performed by Klusza & Associates ("Klusza") in the valuation. While Skidmore's experts testified that Klusza assisted Skidmore's attorneys in determining value and litigation strategy, DOT argued that Klusza merely assisted with litigation strategy.
After considering all of the evidence, the court concluded that Skidmore received at least $700,000 in nonmonetary benefits due to the reconstruction and giving back of Doss Pier. It further found that his attorneys should be compensated for the time in dealing with the "filled lands" issue because it found that the issue was "vigorously pursued by DOT in an attempt to reduce the compensation to be paid Skidmore." In this regard, it concluded that DOT and its experts fueled the claim by communicating directly with the other agencies and causing the issue to be pursued. Opining that the issue would not have arisen but for DOT's actions in the case, the court determined that the filled lands issue was an "ancillary issue arising out of the eminent domain case and upon which attorneys' fees should be paid."
The court also found that Skidmore's paralegals contributed substantial non-clerical, meaningful legal support to the representation of Skidmore and that DOT should be responsible for a reasonable fee for those *1128 services. It found that assistants provided similar support to DOT, but for which no time records were kept.
Based on these factors and Byrne's calculations, it determined the lodestar amount to be $900,000. It rejected Weiner's contrary computations, finding that the method he used was outdated and that he failed to consider any nonmonetary benefits obtained for Skidmore. It noted that, in any event, Weiner's lodestar calculation was slightly higher than Byrne's calculation. In all, it decided not to adjust the $900,000 figure upward or downward based on the $1.225 million in benefits it found Skidmore's attorneys obtained.
The court also reviewed Skidmore's detailed receipts and statements for costs, which Skidmore claimed totaled $75,180.80. In awarding Skidmore $52,180.86 in costs, it reduced only the 4% surcharge that Gunster Yoakley's lawyers testified the firm regularly charged its clients for copying, long-distance telephone charges, and postage, from $36,799.90 to $13,799.96. It awarded the full sums Skidmore sought for travel, mileage, food, and hotel expenses for trial, and for miscellaneous photocopies.
Finally, the court rejected DOT's argument that Klusza served only in a litigation consultant capacity and, therefore, that DOT should not have to pay its appraisal costs. Finding that Klusza performed valuable appraisal services on behalf of Skidmore, it awarded all the costs sought.

I. AWARD OF ATTORNEY'S FEES
DOT first argues that the trial court used an improper method to determine the amount of attorney's fees DOT had to pay Skidmore. It also argues the court failed to account for the fact that a substantial portion of Skidmore's attorney's fees was unrelated to the eminent domain action, that Skidmore did not receive any nonmonetary benefits from his attorney's actions, that the paralegals performed merely clerical work, and that his attorneys ran up the fees due to their inexperience. The standard of review on this issue is abuse of discretion. Dade County v. Brigham, 47 So.2d 602 (Fla.1950).
Methodology
Section 73.092(1), Florida Statutes (1991) governs the award of attorney's fees to a condemnee in eminent domain proceedings. Section 73.092(1) provides, "In assessing attorney's fees in eminent domain proceedings, the court shall give the greatest weight to the benefits resulting to the client from the services rendered." § 73.092(1), Fla. Stat. (1991). The term "benefits" means the difference between the final judgment and the last written offer made by the condemning party before the defendant hires an attorney. Id. A series of additional factors are to be given "secondary consideration," including:
(a) The novelty, difficulty, and importance of the questions involved.
(b) The skill employed by the attorney in conducting the cause.
(c) The amount of money involved.
(d) The responsibility incurred and fulfilled by the attorney.
(e) The attorney's time and labor reasonably required adequately to represent the client in relation to the benefits resulting to the client.
§ 73.092(2)(a)-(e), Fla. Stat. (1991). Finally, the statute instructs that,
[i]n determining the amount of attorney's fees to be paid by the petitioner, the court shall be guided by the fees the defendant would ordinarily be expected to pay if the petitioner were not responsible for the payment of fees and costs.
§ 73.092(4), Fla. Stat. (1991).
Aside from requiring the "greatest weight" be given to the benefits to the client resulting from the attorney's services rendered, § 73.092 does not contain any methodology for making the fee calculation. DOT argues that the correct methodology is prescribed in Solid Waste Authority of Palm Beach County v. Parker, 622 So.2d 1010 (Fla. 4th DCA 1993). The trial court in Parker first applied the lodestar considerations of time expended multiplied by a reasonable hourly rate (the "lodestar fee"). It then added the lodestar fee to a weighted percentage of the "benefit" received in the case. Id. at 1013. On appeal, this court reversed the award, but only because the trial court calculated the benefit *1129 based on a contingency fee schedule, which the supreme court, in Schick v. Department of Agriculture and Consumer Services, 599 So.2d 641 (Fla.1992), previously held may not be done in eminent domain cases.
Contrary to DOT's suggestions, this court did not adopt a hard-line formula for calculating fees in eminent domain cases in Parker. Rather, we have consistently followed, as did the court below, Byrne's method of calculating the fee award by looking at the benefits obtained by the attorneys for the client, determining the appropriate lodestar using the factors listed in § 73.092(2), and then deciding whether to adjust that figure based on the total benefits obtained. See Broward County v. LaPointe, 685 So.2d 889, 891-92 (Fla. 4th DCA 1996); Seminole County v. Delco Oil, Inc., 669 So.2d 1162, 1167 (Fla. 5th DCA), rev. denied, 682 So.2d 1100 (Fla.1996), overruled on other grounds sub. nom, Dep't of Transp., State v. Winter Park Golf Club, Inc., 687 So.2d 970, 971 (Fla. 5th DCA 1997).
Benefits
DOT also disputes that Skidmore received $700,000 in nonmonetary benefits. It maintains that the only quantifiable benefit, the reconstruction of and "giving back" of Doss Pier to Skidmore, did not result from the efforts of his attorneys. We agree. Skidmore fought the rebuilding of the pier throughout these proceedings. Accordingly, and even though the reconstruction of the pier ultimately benefitted Skidmore, the court should not have considered this as a benefit within the meaning of the statute, since the result was obtained solely through the efforts of DOT's attorneys. See Florida Inland Navigation Dist. v. Humphrys, 616 So.2d 494, 497 (Fla. 5th DCA 1993)("[S]ection 73.092 does not allow a trial court to attribute a benefit to a defendant owner's attorney for a ruling obtained by the condemning authority which precludes a potential damage claim by the owner").
Secondary Factors
DOT also challenges the court's findings regarding the secondary factors listed in section 73.092. We disagree in part. Given the novel and complex issues in this case, we find that the total number of hours spent by Skidmore's attorneys (3,974.5) does not seem inconsistent with the hours spent by DOT's attorneys (2,837), who did not even record any time for the first seventeen months of the litigation. Even though Byrne testified that a reasonable hourly rate for the work performed by the attorneys in this case was $200 per hour, the actual time sheets showed that this case was a "highly collegial" effort by all the attorneys in Gunster Yoakley, many of whom had higher hourly rates than their less experienced subordinates. Furthermore, although DOT argues that much of the paralegals' work was clerical, the evidence shows that DOT's legal assistants performed similar work.
However, we believe that, in computing the attorney's total time, the court should not have considered the time spent by Skidmore in litigating the filled lands issue. The record shows that such issue was merely incidental to the eminent domain proceeding. Time spent on this issue is, therefore, not reimbursable because a condemning authority is not responsible for paying for the time spent by attorneys to resolve claims which do not arise as a direct result of the condemnation proceedings. Terry v. Conway Land, Inc., 508 So.2d 401, 406 (Fla. 5th DCA 1987), approved, 542 So.2d 362 (Fla.1989).
Lodestar Amount
Because the court's lodestar calculation of $900,000 includes time spent by Skidmore's attorneys in litigating the filled lands issue, we find this amount excessive and, on this ground, reverse. As we stated, supra, we also reverse the court's finding that Skidmore received at least $700,000 in nonmonetary benefits, on top of the $525,000 in monetary benefits, based on the reconstruction of the Doss Pier.
Even if we were to affirm these figures, we would still reverse the ultimate fee award. Although we typically have denounced using straight percentages of the benefits in calculating fee awards, see Parker, supra, we find it unreasonable to expect that Skidmore would pay $900,000 to his attorneys to receive *1130 only about 25% more in benefits. We do note that where the attorneys'"recovery" for their client is small, their fees will often exceed the benefits obtained. Cf. Winter Park, supra (affirming $61,000 award of fees where good faith deposit was only $1,500). However, in this case, even Byrne testified that attorney's fee awards in eminent domain proceedings are usually only 25% to 35% of the benefit. Given his testimony, and the amazing fact that Skidmore actually had to return monies to DOT, we would find ourselves hard-pressed to affirm this award.

II. ORDER TAXING APPRAISAL COSTS
We also reverse the award of fees for work performed by Klusza. The record reflects that Skidmore retained Klusza in part for litigation strategy. Although the court found that Klusza performed services which were helpful in determining the ultimate question of just valuation of the property, it awarded the full amount of Klusza's bill without any breakdown as to that portion of the bill attributable to Klusza's services as merely a litigation consultant. As such, we reverse and direct the court on remand to determine that portion of Klusza's fee attributable to its services related to the valuation of the property, which is recoverable as long as it is not duplicative, and to that related to litigation strategy, which is not recoverable. See LaPointe, 685 So.2d at 893; Brevard County v. Canaveral Properties, Inc., 696 So.2d 1244, 1246 (Fla. 5th DCA 1997).

III. ORDER TAXING COSTS UNDER THE UNIFORM GUIDELINES
DOT finally argues that the court improperly awarded, as taxable costs, miscellaneous expenses, including travel expenses, copying, long-distance telephone calls, postage, and a surcharge on some of these costs, as follows:

Witness Fees $ 31.04
Service of Process $ 148.00
Mediation $ 255.75
Clerk of Court $ 52.70
Court Reporters $10,870.82
Travel, Mileage, Food, $ 1,764.33
 Hotel for Trial
Computer Research $15,793.23
 Westlaw/Lexis
 Support Database
Document Reproductions $ 3,648.64
 by Third Party vendors
Survey Reproductions $ 1,198.76
 and color copies
Copy Center, misc. $ 152.38
Delivery services $ 2,136.75
Fax incoming/outgoing $ 2,328.50
1.54% surcharge for $13,799.96
 copying long-distance
 telephone and postage[1]
While the Statewide Uniform Guidelines for Taxation of Costs ("Guidelines") governs the award of taxable costs in this case, all provisions for taxable costs contained in the uniform order are meant only as guidelines. The trial court may deviate from the Guidelines depending on the facts of the case as justice may require. Madison v. Midland Nat'l Life Ins. Co., 648 So.2d 1226 (Fla. 4th DCA 1995). In any event, the award of costs is left to the sound discretion of the trial court. Id. at 1228.
We believe the court abused its discretion in awarding certain of these expenses. Specifically, the postage, long distance calls, fax transmissions, and delivery service are office expenses that should not have been taxed as costs. Mitchell v. Osceola Farms Co., 574 So.2d 1162, 1163 (Fla. 4th DCA 1991) (citations omitted). We also find it was an abuse of discretion to award travel expenses, since the record does not indicate that Skidmore's experts and/or trial witnesses had to travel for trial or discovery purposes from out of state. Moreover, the award of computer research costs was error, as such charges are overhead and not properly taxable as costs. See Roberts v. Charter Nat'l Life Ins. Co., 112 F.R.D. 411 (S.D.Fla. 1986). Furthermore, since the record reflects *1131 that the 1.54% surcharge was Gunster Yoakley policy only, and not recoverable under any case, statute, or the Guidelines, we believe the court abused its discretion in awarding that cost. As to the rest of the costs, however, we affirm.
AFFIRMED in part; REVERSED in part and REMANDED for further proceedings in accordance with this opinion.
GROSS and TAYLOR, JJ., concur.
NOTES
[1] We agree with DOT that this 1.54% figure must be a scrivener's error. Leigh Dunston of Gunster Yoakley testified that the firm routinely charges 4% of its billings to clients to cover miscellaneous costs. Four percent of the attorneys' billed time yields the $36,000+ figure reflected in the court's order, even though it reduced that figure, for reasons not apparent from the record, to $13,799.96.