935 So.2d 513 (2006)
OCEAN CLUB COMMUNITY ASSOCIATION, INC., Appellant,
v.
Peter CURTIS, Appellee.
Nos. 3D06-132, 3D05-1464.
District Court of Appeal of Florida, Third District.
April 5, 2006.
Rehearing Denied August 31, 2006.
*514 Douberley & Cicero and Thomas A. Groendyke, for appellant.
Lorenzo & Capua and Peter Marcellus Capua, Miami, for appellee.
Before WELLS, CORTIÑAS, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
In this consolidated appeal, the defendant, Ocean Club Community Association, Inc. ("OCCA"), appeals from orders awarding attorney's fees and costs to the plaintiff, Peter Curtis. We affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.
The plaintiff was the tennis director at OCCA. After he was terminated, he filed an amended complaint, asserting three causes of action: breach of employment contract, conversion, and defamation. The conversion count, which contains a claim for attorney's fees, stems from the plaintiff's allegation that OCCA withheld income that he had earned by giving tennis lessons.
On April 1, 2004, OCCA served the plaintiff with a proposal of settlement, offering to settle for $15,000, which the plaintiff did not accept. A few months later, on June 28, 2004, the breach of contract claim was dismissed on summary judgment and, at the non-jury trial held in November 2004, the plaintiff's defamation claim was dismissed. Following the non-jury trial, in December 2004, the trial court entered a final judgment awarding $1,717.82 to the plaintiff on the conversion/unpaid wages claim, which this court *515 affirmed on appeal. Ocean Club Cmty. Ass'n v. Curtis, 934 So.2d 522 (Fla. 3d DCA 2005).
The plaintiff's attorney, Peter Capua, submitted a verified petition for attorney's fees, which was supported by a copy of the attorney engagement agreement, an attorney fee affidavit, a costs statement, and two supplemental affidavits for services rendered. The trial court found that the plaintiff prevailed on the conversion claim, and that he was entitled to attorney's fees and costs pursuant to section 448.08, Florida Statutes (2004).[1]
An evidentiary hearing was held to determine the amount of attorney's fees and costs. At the hearing, Mr. Capua testified that he worked on the entire case for a total of 165 to 170 hours, but that only 143.6 of those hours were spent on the conversion claim, and that he had already excised from his timesheets those hours that were not related to the conversion claim. Mr. Capua also stated that he was seeking an hourly rate of $350, although he has charged anywhere from $200 to $350 per hour, depending on the type of case. Mr. Capua explained that, after summary judgment was entered on the breach of contract claim, he did not perform any independent work on the defamation claim, and that 99% of the case dealt with the conversion (unpaid wages) claim. The entries in Mr. Capua's timesheet did not specifically allocate how much time was expended on each claim. Mr. Capua testified that the claims were "inextricably intertwined and therefore I'm not able to make an allocation." When asked what he meant by "inextricably intertwined," he stated, "What I mean is that when I did my discovery the discovery went to all issues . . . ."
During Mr. Capua's cross-examination, OCCA's counsel referred to the depositions of several witnesses. He noted, for example, that, although Mr. Capua was seeking attorney's fees for the entire amount of time expended at a deposition, only a fraction of the deposition dealt with the conversion claim.
Frank Allocca, Esquire, testified as an expert for the plaintiff. He testified that he expended 24.5 hours reviewing Mr. Capua's file and in testifying in the matter, and that his hourly rate is $350. He opined that a reasonable hourly rate for Mr. Capua's services was $350, and that Mr. Capua expended 178 hours on the conversion claim and matters that were inextricably intertwined with that claim.
Leslie Langbien, Esquire, testified as an expert on behalf of OCCA. She testified that a reasonable hourly rate for Mr. Capua was $250, and that Mr. Capua reasonably expended 28.85 hours on the conversion claim.
The trial court found that a reasonable hourly rate for Mr. Capua was $300; that 11.5 hours claimed by Mr. Capua were not directly related to the unpaid wages claim or were not inextricably intertwined with that claim; and that Mr. Capua necessarily spent 132.1 hours on the unpaid wages claim and 10.2 hours litigating the entitlement to attorney's fees, for a total of $42,690. In addition, the trial court found that the plaintiff's expert, Mr. Allocca, necessarily spent 24.5 hours preparing for and testifying at the attorney's fees hearing, and a reasonable hourly rate for him was $350, for a total of $8,575. Finally, the trial court awarded the plaintiff $1,258.05 in costs. These appeals followed.
*516 OCCA contends that the trial court erred by finding that the plaintiff was entitled to an award of attorney's fees and costs pursuant to section 448.08, Florida Statutes (2004). We disagree.
Pursuant to section 448.08, Florida Statutes (2004), the prevailing party in an unpaid wages claim is entitled to an award of attorney's fees and costs. In the instant case, on the conversion/unpaid wages claim the plaintiff was awarded over $1,700 for income he had earned by giving tennis lessons at OCCA. As these amounts are considered wages pursuant to section 448.08, the trial court properly found that the plaintiff was entitled to an award of attorney's fees and costs. See D.G.D., Inc. v. Berkowitz, 605 So.2d 496 (Fla. 3d DCA 1992) (holding that unpaid commissions were "wages" within the meaning of section 448.08); Gulf Solar, Inc. v. Westfall, 447 So.2d 363, 367 (Fla. 2d DCA 1984) (stating that the definition of "wages" in Black's Law Dictionary 1416 (5th ed. 1979) should be used in construing the term "wages" as used in section 448.08; Black's Law Dictionary provides, in part, that the term "wages" "should be broadly defined and includes not only periodic monetary earnings but all compensation for services rendered without regard to manner in which such compensation is computed"). Thus, we affirm the trial court's order finding that the plaintiff was entitled to an award of attorney's fees and costs pursuant to section 448.08, Florida Statutes (2004).
OCCA also contends that the trial court committed reversible error by awarding attorney's fees for services rendered by the plaintiff's attorney that were not related to the conversion claim. We agree.
In the instant case, the plaintiff alleged multiple counts in his amended complaint  breach of employment contract, conversion, and defamation. A trial court's "determination of whether multiple claims within a lawsuit are separate and distinct is a matter of law to be reviewed de novo." Anglia Jacs & Co. v. Dubin, 830 So.2d 169, 171 (Fla. 4th DCA 2002). Mr. Capua explained that he was not able to make an allocation for each entry in his timesheet because the claims were "inextricably intertwined." Contrary to Mr. Capua's assertion, a review of the amended complaint indicates that each claim was separate and distinct, not inextricably intertwined, because each claim "could support an independent action and are not simply alternative theories of liability for the same wrong." Avatar Dev. Corp. v. DePani Constr., Inc., 883 So.2d 344, 346 (Fla. 4th DCA 2004). The breach of contract claim dealt with the alleged breach of an employment contract, the defamation claim asserted that OCCA made allegedly false statements regarding the plaintiff, and the conversion claim asserted that OCCA withheld income that the plaintiff had earned by giving tennis lessons. As each count is separate and distinct and the plaintiff is only entitled to an award of attorney's fees as to the conversion/unpaid wages claim, the plaintiff has "an affirmative burden to demonstrate what portion of the effort was expended on the claim which allowed attorney's fees." Rockledge Mall Assocs., Ltd. v. Custom Fences of Brevard, Inc., 779 So.2d 558, 559 (Fla. 5th DCA 2001) (citing Plapinger v. E. States Props. Realty Corp., 716 So.2d 315 (Fla. 5th DCA 1998)); see also Salisbury v. Spielvogel, 451 So.2d 974, 975 (Fla. 4th DCA 1984) ("In seeking attorney's fees for services in litigation where the prevailing party may be entitled to fees for services regarding some of the issues but not others, the burden of proving entitlement to fees is upon the party claiming them.") *517 (citing United Servs. Auto. Ass'n v. Kiibler, 364 So.2d 57 (Fla. 3d DCA 1978)).
A review of Mr. Capua's timesheets, the record on appeal, and the order awarding over $42,000 in attorney's fees to the plaintiff, indicates that the trial court abused its discretion because it awarded attorney's fees for services rendered that were clearly not related to the conversion claim. For example, Mr. Capua claimed and was granted 4.75 hours of attorney's fees for matters relating to the deposition of Caroline Grantz. A review of Ms. Grantz's deposition reflects that her testimony addressed only the defamation count, not the conversion count. In addition to the attorney's fees relating to Ms. Grantz's deposition, the record also reflects that Mr. Capua sought and was awarded approximately twenty-six hours of attorney's fees for matters relating to the depositions of the plaintiff and two other witnesses, Christopher Blackman and Jeffrey Miller. A review of these depositions, however, reflects that more than half of the time spent did not pertain to the conversion count. It was, therefore, an abuse of discretion to award fees for the services unrelated to the conversion count.
These are only a few examples of fees awarded for work unrelated to the conversion claim. On remand, the trial court is instructed to go through each entry reflected in Mr. Capua's timesheet and to determine if the entry or a portion of the entry was for services rendered for the unpaid wages/conversion claim. The trial court is to keep in mind that the plaintiff, as the party seeking attorney's fees, bears "an affirmative burden to demonstrate what portion of the effort was expended on the claim which allowed attorney's fees," Rockledge Mall, 779 So.2d at 559, and if he cannot meet his burden for any reason, including inadequate timesheets or record keeping, he cannot be awarded attorney's fees.
OCCA also contends that the trial court abused its discretion in awarding certain costs to the plaintiff. As we conclude that the award did not comport with the Statewide Uniform Guidelines for Taxation of Costs in Civil Actions ("Guidelines"), see Reeser v. Boats Unlimited, Inc., 432 So.2d 1346, 1349 n. 2 (Fla. 4th DCA 1983) (quoting In re: Statewide Uniform Guidelines for Taxation of Costs in Civil Actions, 7 Fla. L. Weekly 517 (Fla.1981)), and there were no facts to support such a departure, see Borja v. Nationsbank of Fla., N.A., 730 So.2d 799 (Fla. 3d DCA 1999); State, Dep't of Transp. v. Skidmore, 720 So.2d 1125, 1130 (Fla. 4th DCA 1998) (holding that the trial court may "deviate from the Guidelines depending on the facts of the case as justice may require"), we agree.
A trial court's award of costs is reviewed by appellate courts for an abuse of discretion. Thomas v. Perkins, 723 So.2d 293 (Fla. 3d DCA 1998). In the instant case, the plaintiff properly concedes that the trial court abused its discretion by awarding $93.54 for costs relating to computerized legal research, as these costs are not compensable. See Skidmore, 720 So.2d at 1130 (holding that "award of computer research costs was error, as such charges are overhead and not properly taxable as costs").
OCCA also challenges the award of certain costs, which the plaintiff contends were appropriately awarded. For example, OCCA contends that the trial court abused its discretion by awarding costs for services rendered by Black's Copy Service. The Guidelines provide that the cost of copies of documents that are filed in the court file or filed and received in evidence during trial should be taxed. In addition, the Guidelines provide that the "cost of *518 copies obtained during course of discovery and not used at trial should not be taxed, but the presiding Judge should exercise his discretion on the taxability of the cost of such copies if the facts of the entire case warrant an award of the cost of such copies." As there was no indication whether any of the copies were filed in the court file or used at trial, we conclude that the trial court abused its discretion by awarding costs for the services rendered by Black's Copy Service. Upon remand, if the plaintiff can establish that any of these copies were filed in the court file or received into evidence, the costs associated with these copies are recoverable.
OCCA also asserts that the trial court abused its discretion by awarding costs for certain depositions. We agree.
A review of the record reflects that, while the trial court awarded costs for several depositions, only a portion of Mr. Curtis' deposition was used during the summary judgment hearing and no deposition or portion of a deposition was introduced during the trial. Additionally, as previously discussed, the deposition of Ms. Grantz dealt solely with the defamation claim. As the Guidelines do not provide for the awarding of such costs, we conclude that the trial court abused its discretion in awarding costs for depositions not introduced at trial or other hearing and/or unrelated to the plaintiff's conversion claim. We reverse the portion of the order awarding $1,258.05 in costs and remand for further proceedings consistent with this opinion.
Finally, OCCA contends that the trial court abused its discretion by taxing as costs the expert witness fee of Mr. Allocca, the attorney who testified on behalf of the plaintiff at the attorney's fee hearing. As we agree with OCCA that the expert witness fee awarded by the trial court was excessive, we reverse the portion of the order awarding $8,575 in expert witness fees, and remand for entry of a reasonable expert witness fee.
The trial court found that Mr. Allocca reasonably and necessarily expended 24.5 hours preparing for and testifying at the attorney's fee hearing, awarding $8,575 in expert witness fees for Mr. Allocca. A review of the record indicates that, although it was clear that the plaintiff was entitled to attorney's fees only as to services expended on the unpaid wages claim, Mr. Allocca made no effort to apportion the time expended by Mr. Capua between the three separate and distinct claims. In essence, Mr. Allocca spent three work days on this matter to come up with the ultimate conclusion that practically every hour that Mr. Capua worked on the case was expended on the unpaid wages claim. Moreover, it is interesting to note that Mr. Capua testified that he expended 143.6 hours on the unpaid wages claim, whereas, Mr. Allocca testified that Mr. Capua expended approximately 178 hours on the unpaid wages claim. Further, Mr. Allocca's billing statements contain examples of where excessive hours were claimed. One such example is where Mr. Allocca's billing statements include an "estimated" three hours for his attendance at the attorney's fee hearing, but his testimony lasted approximately one and one-half hours. Upon remand, the trial court is instructed to review Mr. Allocca's billing statements to determine which hours were reasonably and necessarily expended in preparing for and testifying at the attorney's fee hearing.
Accordingly, the orders under review are affirmed, in part, reversed, in part, and *519 remanded for further proceedings consistent with this opinion.
NOTES
[1] Section 448.08, Florida Statutes (2004), provides: "The court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fees."