DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CARL DOMINO, INC.** and
**CARL DOMINO,** individually,
Appellants,

v.

**MICHAEL DIXON, CAROL DIXON,** and
**YOUR PLANNING PARTNER, LLC,**
Appellees.

No. 4D2024-0646

[May 21, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Reid P. Scott, Judge; L.T. Case No. 50-2017-CA-004091-XXXX-MB.

Carl J. Domino, Jupiter, for appellants.

Renee Marie Smith, Jupiter, for appellees.

WARNER, J.

Appellants, Carl Domino, individually, and Carl Domino, Inc. (CDI), timely appeal an order awarding attorney's fees to appellees, Michael Dixon, Carol Dixon, and Your Planning Partner LLC (YPP). The fees were awarded after a partial reversal of the final judgment against appellants in *Carl Domino, Inc. v. Dixon*, 358 So. 3d 29 (Fla. 4th DCA 2023) (hereinafter *CDI I*). In that opinion, we noted that in awarding attorney's fees to appellee Michael Dixon, the trial court cited to no statute or contract authorizing fees. *Id.* at 34–35. We remanded for the court to state a basis for fees if awarded. *Id.* at 35.

On remand, the trial court assessed all attorney's fees incurred in the litigation, even though the only basis stated for a fees award was section 448.08, Florida Statutes (2021), authorizing fees to a prevailing party for an unpaid wage claim. While the trial court found that all counts of the complaint litigated arose from a common core of facts, we disagree and reverse the fees award.

The pertinent facts to this attorney's fee award are set forth in *CDI I.* The suit arose from appellee Michael Dixon's termination of his relationship as chief operating officer of CDI, a wealth management company, and Michael's establishment of his own wealth management company, YPP, with his daughter, Carol, also a former CDI employee. *CDI I*, 358 So. 3d at 31.

CDI filed a complaint against Michael Dixon, Carol, and YPP, alleging the following claims:

> The claims tried included: defamation against Michael and Carol for disparaging the viability of CDI; unjust enrichment against Michael; violation of duty and loyalty against Carol and Michael for soliciting clients while still employed, or as an officer of CDI; and destruction of corporate files against Carol. Essentially, CDI argued that Michael and Carol took information from CDI and used it to solicit clients, violating their duties to CDI and unjustly enriching themselves, and YPP vicariously. In the unjust enrichment count, CDI alleged that Michael had been paid according to a contract which had not been signed, and thus CDI should be equitably entitled to the return of those monies.

*Id.* CDI also alleged three counts which it dismissed shortly before trial: misappropriation of trade secrets against Michael; tortious interference against all appellees; and defamation against Carol.

Appellees answered and raised affirmative defenses. *Id.* Later, Michael filed a counterclaim against CDI and a third-party complaint against Domino personally. *Id.* Michael's counterclaim against CDI alleged a breach of contract based on unpaid wages and a separate claim for unjust enrichment. The third-party complaint against Domino alleged that Domino had not paid his fair share of expenses on properties that the two jointly owned, seeking partition of the property. *Id.*

All the claims, other than the three that CDI had dismissed, proceeded to a bench trial, where the trial court ruled for appellees on all of CDI's claims, and ruled for Michael on both his counterclaim and third-party complaint. *Id.* at 32. In ruling for Michael on his unpaid wages counterclaim, the trial court awarded him his unpaid wages "plus reasonable attorney's fees and costs." The final judgment also found that

2

the "Defendant/Counterplaintiff"—singular, not plural—was entitled to "reasonable attorney's fees and costs."

On appeal in *CDI I*, we affirmed the trial court's rulings on CDI's claims, as well as the trial court's ruling for Michael on his unpaid wages counterclaim. *Id.* at 35. However, we reversed the judgment for partition, finding that the third-party complaint should have been dismissed and filed separately, because it was not related to the subject matter of CDI's complaint nor was it a claim for subrogation, contribution, or indemnification. *Id.* We also reversed the judgment as to attorney's fees, finding that the trial court had not stated a legal basis for the fees, and remanded "for the court to either state a legal basis for fees or to deny fees." *Id.*

Following our ruling in *CDI I*, appellees filed a motion to amend the final judgment, requesting that the trial court fix its error in not citing the proper statute for the attorney's fees award. The motion stated that Michael was entitled to fees pursuant to section 448.08, Florida Statutes (2021), which authorizes the prevailing party to recover attorney's fees in unpaid wages claims. The trial court granted the motion and determined that fees were awardable pursuant to section 448.08.

All appellees joined in a motion to set the amount of attorney's fees. The motion sought $112,272.50 in fees and $6,990.55 in costs. Appellees' motion stated that all of the fees requested were directly related to recovery of unpaid wages.

CDI filed objections to appellees' fees motion, claiming that all the fees were not related to the wage claim, relying on *Van Diepen v. Brown*, 55 So. 3d 612 (Fla. 5th DCA 2011). The trial court held a hearing, at the outset of which CDI stipulated to the attorney's hourly rates as being reasonable. However, the parties disagreed whether and to what extent Michael's unpaid wages counterclaim was related to the other claims. The appellees' attorney contended that all of the claims, except for the partition action, arose from a common core of facts, and thus all the time expended should be recoverable, except a small amount for the partition action. CDI contended that most of the litigation was not related to Michael's unpaid wages counterclaim.

Following the hearing, the trial court issued an order granting appellees all of their claimed attorney's fees and costs, finding:

[B]ased on the review of the totality of the circumstances, the case file, the prior record, the record evidence, the arguments by counsel and the supplemental briefs, the Court does find that the claims in the Complaint and the Counter Claim involved an inter-related factual situation with a "common core," based inter-related legal theories in which it was necessary for the Counsel for the Defendants/Counter Plaintiffs to effectively perform work to defend against the counts in the Complaint in order to successfully prevail on the Counter Claim, such that all counts and the work required to prepare were inextricably intertwined.

CDI filed a motion for rehearing, again arguing that the claims were not all interrelated such that appellees were entitled to attorney's fees relating to all of the claims. CDI also argued that appellees' retainer agreement with their counsel, referenced for the first time at the hearing, limited the recoverable fees. The trial court denied the motion. This appeal followed.

**Analysis**

**(1) Retainer Agreement**

CDI first claims that appellees' claimed attorney's fees should be limited to the retainer agreement of $36,000, relying on *First Baptist Church of Cape Coral, Florida, Inc. v. Compass Construction, Inc.*, 115 So. 3d 978 (Fla. 2013). In *First Baptist*, the supreme court considered an alternative fee recovery clause which provided that the client would be charged $170 per hour, but should anyone other than the client be required to pay the fees, "the hourly rate for attorney's fees would be $300.00 . . . , or such amount as is determined by the [c]ourt, whichever is higher." *Id.* at 979 (alteration in original). The supreme court found the clause valid, as even if a contract provides that prevailing party attorney's fees may be higher than those charged to the client, "any court-ordered fee is subject to judicial review under [*Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985)]." *Id.* at 983.

*First Baptist* does not apply here, as this case does not involve the type of alternative fee arrangement discussed in *First Baptist*. In such an arrangement, the client agrees to an hourly rate and then agrees to a higher fee should the trial court order the fees paid by a third party. The supreme court reasoned this arrangement was acceptable because "[o]nce a fee-shifting statute or contract triggers a court-awarded fee, the trial court is constrained by *Rowe* and its progeny in setting a fee that must be

4

reasonable.  This alleviates any concern that enforcing an alternative fee recovery clause will result in the nonprevailing party paying an unreasonable fee." *Id.* at 982.

However, in this case, appellees did not agree to one amount of fees to be paid by them and another amount to be paid by a third party.  Rather, appellees agreed to pay their counsel $36,000 no matter what, and to pay all of her fees if they prevailed.  Thus, had counsel successfully defended appellees against CDI's claims, but had not prevailed on the counterclaim, appellees still would have owed the full amount of fees for defending against CDI's claims.  Moreover, under their agreement, appellees owe all fees unrelated to the counterclaim for unpaid wages.  Therefore, the retainer agreement does not create a limit for the compensable fees.

### (2) Interrelatedness of Claims for an Award of Attorney's Fees

The trial court found that section 448.08 authorized an award of attorney's fees for unpaid wages.  Thus, fees were awardable only for Michael's unpaid wages claim.  No fees would be due to the other appellees, as they are not entitled to any fees for defending any of CDI's claims.

Although an award of attorney's fees is generally reviewed for abuse of discretion, *see Anglia Jacs & Co., Inc. v. Dubin*, 830 So. 2d 169, 171 (Fla. 4th DCA 2002), CDI's argument on appeal is that the trial court erred in holding that the legal services expended in defending against all of CDI's claims were inextricably intertwined with the services expended in prosecuting Michael's counterclaim for unpaid wages.  On this issue, review is de novo.  *See Household Fin. Corp. III v. Williams*, 290 So. 3d 508, 510 (Fla. 4th DCA 2020) (citing *Dubin*, 830 So. 2d at 171) ("[A] trial court's determination of whether multiple claims within a lawsuit are separate and distinct is subject to a de novo review.").

Where a party is entitled to an award of attorney's fees only on some claims involved in litigation, it is the responsibility of that party to allocate fees between those claims upon which fees can be awarded and those which do not allow fees.  This requires an evaluation of the relationship between the various claims:

> In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and "where the claims involve a 'common

5

core' of facts and are based on 'related legal theories,' a full fee may be awarded *unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought* [*or were authorized* ]." [*Dubin*, 830 So. 2d at 172] (emphasis added); . . . . "[T]he party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." *Lubkey v. Compuvac Sys., Inc.*, 857 So. 2d 966, 968 (Fla. 2d DCA 2003).

*Chodorow v. Moore*, 947 So. 2d 577, 579–80 (Fla. 4th DCA 2007) (alterations in original).

Similarly, in *Van Diepen*, the court explained:

It is the party seeking attorney's fees on multiple claims who has an affirmative burden to demonstrate what portion of the effort was expended on the claim that authorized attorney's fees. *See Rockledge Mall Assoc., Ltd. v. Custom Fences of Brevard, Inc.*, 779 So. 2d 558, 559 (Fla. 5th DCA 2001). If the moving party cannot meet [their] burden for any reason, including inadequate, confusing or imprecise timesheets or record keeping, he or she should not be awarded attorney's fees for those vague or incomprehensible charges. *Ocean Club Cmty. Ass'n, Inc. v. Curtis*, 935 So. 2d 513 (Fla. 3d DCA 2006). That is to say, the party against whom fees are sought should not be punished because of the lack of adequate record keeping by the party seeking fees. *See also Crown Custom Homes, Inc., v. Sabatino*, 18 So. 3d 738 (Fla. 2d DCA 2009).

. . . .

Where the claims are . . . distinct from each other . . . , no attorney's fees are awardable if the attorney billing records do not support the fee.

55 So. 3d at 614-15; *accord Effective Teleservices, Inc. v. Smith*, 132 So. 3d 335 (Fla. 4th DCA 2014).

"Claims are inextricably intertwined when a determination of the issues in one action would necessarily be dispositive of the issues raised in the other." *Household Fin Corp.*, 290 So. 3d at 511 (quoting *Dubin*, 830 So. 2d at 172). On the other hand, "[c]laims are separate and distinct if '[each

6

claim] could support an independent action and are not simply alternative theories of liability for the same wrong.'" *Id.* (quoting *Padgett v. Kessinger*, 190 So. 3d 105, 108 (Fla. 4th DCA 2015)). "[T]he party seeking fees has the burden to allocate [fees] to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." *Lubkey v. Compuvac Sys., Inc.*, 857 So. 2d 966, 968 (Fla. 2d DCA 2003).

The inquiry is not only whether the trial court can parse out time spent working on the awardable and non-awardable claims, but also whether the claims are similar enough that time spent furthering one claim also furthers the other. *See 22nd Century Props., LLC v. FPH Props., LLC*, 160 So. 3d 135, 144 (Fla. 4th DCA 2015) (quoting *Durden v. Citicorp Tr. Bank, FSB*, 763 F. Supp. 2d 1299, 1306 (M.D. Fla. 2011)) ("Thus, for example, where a particular claim is subject to a fee entitlement but one or more related claims are not, 'time spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'").

While a common core of facts is part of the similarity analysis, the legal theories also must be related in order for the time spent on the non-awardable claims to be compensable. In *Shelly L. Hall, M.D., P.A. v. White*, 97 So. 3d 907 (Fla. 1st DCA 2012), the plaintiff brought an unpaid wage claim as well as other claims regarding her services as an independent contractor, and the defendant brought several counterclaims. *Id.* at 908. After a jury trial, the plaintiff prevailed on the unpaid wage claim in the amount of $914, and on another claim. *Id.* The defendant did not prevail on its counterclaims. *Id.* The plaintiff sought attorney's fees pursuant to section 448.08. *Id.* Both the plaintiff's attorney and expert testified that all the claims arose from a common core of facts and the time spent on each claim could not be separated. *Id.* The trial court awarded all the fees to the plaintiff, agreeing with the expert that the claims were inextricably intertwined. In reversing, the First District explained:

> As to the claim for fees under Chapter 448, we find that the fee award for $84,898.25 constituted an abuse of discretion. First, we do not agree that the issues in the case were inextricably intertwined because our review of the appellees' second amended complaint leads us to believe that the claims could support independent actions and were not simply alternative theories of liability for the same wrong. *See e.g., Ocean Club Cmty. Ass'n v. Curtis*, 935 So. 2d 513, 516 (Fla. 3d DCA 2006). Furthermore, as the party seeking fees, the appellees carried the burden of allocating the fees to the

7

Chapter 448 claim for which fees were awardable or showing that the issues were so intertwined that allocation was not feasible. *See Lubkey v. Compuvac Systems, Inc.*, 857 So. 2d 966, 968 (Fla. 2d DCA 2003). *See also Crown Custom Homes, Inc. v. Sabatino*, 18 So. 3d 738, 740 (Fla. 2d DCA 2009) (reversing fee order and finding that the expert's opinion that the claims were sufficiently intertwined lacked any factual foundation and did not constitute competent proof). Here, as in *Crown*, the trial court made no factual findings to support its legal conclusion that the claims were inextricably intertwined, and the appellees failed to offer sufficient proof in the form of detailed time records and further elaboration from Winter to support a finding of such on review. *Id.*

*Id.* at 909. Our analysis therefore must review each claim to determine whether the claims are inextricably intertwined, both in a common core of facts and related legal theories.

Michael's unpaid wages claim, the only claim which was compensable on its own, was brought as a breach of contract claim. "The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003). In proving a valid contract, Michael had to prove both the general employment contract and the additional agreement that he would receive 100% of CDI's fees from clients whom Michael brought from preexisting relationships, up to $150,000 per year.[1] To prove that both agreements were breached, Michael had to prove that he performed his obligations under the employment contract but was not paid his full salary, and that he brought in certain clients from preexisting relationships, but was not paid the full amount which he was owed in fees. His damages were the specific sums which he was still owed under both agreements. This cause of action provides the common core of facts. To be compensable, the other causes of action must also involve related legal theories to this claim.

---

[1] The employment contract provided that in addition to his salary, Michael would receive "100% of all fee income generated from existing business clients and relationships Mr. Dixon brings to CDI, up to a maximum of $150,000 per annum."

**Michael's Claims**

    A) <u>Count II of Michael's Counterclaim–Unjust Enrichment</u>

Notably, Count II of Michael's counterclaim did not allege unjust enrichment as an alternative theory to obtain the monies which he was owed from his employment contract in the event that the court found no express contract existed. Rather, Michael argued that, in addition to being owed his unpaid wages, he was owed further compensation because CDI continuously dismissed other officers, and Michael had to absorb these responsibilities without a salary increase or other compensation. Thus, Michael argued that he directly conferred a benefit on CDI by performing responsibilities outside of his role, and that it would be unjust for CDI to retain this benefit without compensating Michael. Michael did not prevail on this claim.

"Claims are separate and distinct if 'they could support an independent action and are not simply alternative theories of liability for the same wrong.'" *Household Fin. Corp.*, 290 So. 3d at 511 (quoting *Padgett*, 190 So. 3d at 108). Here, while the claims involve some overlapping facts, the legal theories are not inextricably intertwined, as evinced by the fact that CDI prevailed on Michael's counterclaim for unjust enrichment while Michael prevailed on his counterclaim for breach of contract. *See Dubin*, 830 So. 2d at 171 (emphasis added) ("Generally, when an action for breach of contract contains alternative theories of liability for the same wrong, rather than separate and distinct claims, *only one party can prevail in the same lawsuit*."). As Michael's unjust enrichment counterclaim concerned compensation for extracontractual duties, it was separate and distinct from his unpaid wages counterclaim, based on breach of the employment contract. Attorney's fees expended to prove this unjust enrichment claim should have been excluded.

    B) <u>Michael's Third-Party Claim for Partition of Real Property</u>

Michael admits that he was not seeking attorney's fees for the partition action which was based not only on separate facts but also separate legal theories. Although Michael's counsel testified that she did not seek fees for time spent on the third-party complaint, at least some entries on the time sheet submitted relate only to the third-party complaint. Therefore, Michael is required to exclude any fees expended on the third-party complaint.

**CDI's Claims**

1) Voluntarily Dismissed Claims:

CDI voluntarily dismissed four counts shortly before the trial and over four years after it had filed its complaint. Thus, even though CDI dismissed these counts, the counts had been pending for four years. If the counts related to a common core of facts and were based on related legal theories, Michael would be entitled to recover for the attorney's fees expended in defending them.

a) Count I–Misappropriation of Trade Secrets Against Michael

CDI's trade secrets claim alleged that all of the defendants acquired CDI's client list "by improper means." The claim involved analysis of how CDI's client list was formed, what information the list included, and who took the list. Michael's unpaid wages counterclaim involved analysis of whether he and CDI had an enforceable employment contract, whether Michael performed his duties under that contract, and which clients Michael brought to CDI from preexisting relationships, not what clients or lists were taken from CDI. These claims were not inextricably intertwined, as the determination of one claim was not dispositive to the other. *See Household Fin Corp.*, 290 So. 3d at 511. Attorney's fees regarding this claim are not recoverable by Michael.

b) Count II–Tortious Interference Against All Appellees

Count II alleged tortious interference with business relationships against all appellees. The count alleged that the defendants interfered with CDI's contractual relationships with its clients, causing CDI to lose clients. The tortious interference claim did not involve Michael's own employment contract, but whether CDI's clients who left for YPP had contracts with CDI that were not terminable at will, and, if so, whether appellees induced these clients to breach their contracts. *See Advantage Dig. Sys., Inc. v. Dig. Imaging Servs., Inc.*, 870 So. 2d 111, 115 (Fla. 2d DCA 2003) ("Competition for business by a competitor is not actionable, even if intentional, unless the competitor is attempting to induce a customer to breach a contract that is not terminable at will."). Neither the core of facts nor the legal theories were inextricably intertwined with Michael's unpaid wages counterclaim.

c) Count VII–Defamation Against Carol

Michael would not be entitled to any attorney's fees incurred by Carol for defending against the defamation claim, as Michael was not named as a defendant in this count. Fees incurred exclusively for defending Carol in this claim are not compensable.

2) Counts Tried Against Michael

a) Count VIII–Defamation

CDI sued all appellees for defamation for falsely stating to CDI clients that CDI was going to close down, because Domino was no longer interested in the business and was running for political office. Not only is there no common core of facts with Michael's unpaid wages counterclaim, the legal theories are completely different. Appellees argue that these statements related to Michael's employment with CDI and are thus inextricably intertwined with his counterclaim. However, proving the truth of these statements, or proving any other defense to defamation, did not involve proving whether Michael had an enforceable employment contract with CDI, or whether he performed his duties under any such contract. Rather, to prevail, Michael had to prove that his statements about Domino's political activity and the viability of CDI were truthful statements, opinions, or good-faith beliefs. That analysis was not inextricably intertwined with proving Michael's unpaid wages counterclaim. The legal theories were completely different as well. Attorney's fees expended with respect to this claim should be excluded.

b) Count IX–Violation of Duty of Loyalty Against Michael

CDI sued Michael for violating his duty of loyalty to CDI by soliciting CDI's clients while still employed as a CDI director. "[A]n employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment or soliciting customers and other employees prior to the end of his employment." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007). The duty of loyalty is independent of a contractual duty pursuant to an employment contract. *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1378 (S.D. Fla. 1991) ("[A] corporate officer or director owes a **duty of loyalty to [their] corporation which is independent of [their] contractual obligations arising out of the employment contract**.") (emphasis added).

Proving the conditions of Michael's employment contract was not essential to proving whether he violated his duty of loyalty to CDI, as the duty of loyalty is independent of the employment contract. *AmeriFirst*, 757 F. Supp. at 1378. Even without a noncompetition clause, Michael still would have violated his duty of loyalty if he solicited customers for YPP while still employed at CDI. *Taubenfeld v. Lasko*, 324 So. 3d 529, 539 (Fla. 4th DCA 2021). Thus, no common core of facts exists between Michael's unpaid wages counterclaim claim and CDI's duty of loyalty claim, nor are the legal theories related.

c) Count X–Unjust Enrichment Against Michael

CDI alleged that Michael was unjustly enriched by taking compensation as if he had signed the employment contract when he had not, and by taking 100% of the fees from clients whom he had not brought into CDI from preexisting relationships. CDI's unjust enrichment claim alleged that Michael was unjustly enriched by monies to which he was not entitled, while Michael's unpaid wages counterclaim alleged that he had not been paid all of the monies to which he was entitled. Accordingly, Michael's defense against CDI's unjust enrichment claim was inextricably intertwined with the prosecution of his unpaid wages counterclaim, and the attorney's fees would be recoverable against CDI.

3 Counts Tried Against Carol

CDI alleged Carol violated a duty of loyalty and destroyed corporate records. As these counts did not involve Michael, he cannot recover attorney's fees expended defending Carol on these counts. To the extent that time was spent on these counts, such time should be excluded.

**Conclusion**

Except for CDI's unjust enrichment claim against Michael, neither the facts necessary to prove each count, nor the legal theories alleged, were inextricably intertwined with Michael's unpaid wages counterclaim. The trial court's unsupported legal conclusion that all the claims were based on a common core of facts and were interrelated was error.

> If the moving party cannot meet [their] burden for any reason, including inadequate, confusing or imprecise timesheets or record keeping, he or she should not be awarded attorney's fees for those vague or incomprehensible charges . . . . That is to say, the party against whom fees are sought should not

be punished because of the lack of adequate record keeping by the party seeking fees.

*Van Diepen*, 55 So. 3d at 614 (internal citation omitted).

Michael had the burden to prove which attorney's fees were allocable to his unpaid wages counterclaim and to separate out those fees which were not based upon interrelated legal theories. Michael failed to do that. Therefore, we reverse the fees order and remand for a new fee hearing to be conducted consistent with this opinion. Finally, any subsequent order or judgment for fees in Michael's favor should be rendered against CDI only, as only CDI was found liable on Michael's unpaid wages counterclaim.

*Reversed and remanded for further proceedings.*

KLINGENSMITH C.J., and DAMOORGIAN, J., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***