725 So.2d 1255 (1999)
CENTEX-ROONEY CONSTRUCTION CO., INC., Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, and The American Insurance Company, Appellants,
v.
MARTIN COUNTY, Florida, Appellee.
No. 97-1473
District Court of Appeal of Florida, Fourth District.
February 3, 1999.
*1256 John Beranek of Ausley & McMullen, Tallahassee, and Michael Evan Jaffe, David T. Dekker, and Bryan J. Sinclair of Arent Fox Kintner Plotkin & Kahn, Washington, D.C., for Appellant Centex-Rooney Construction Co., Inc.
James E. Glass and Andre Zamorano of James E. Glass Associates, Miami, for Appellants Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, and The American Insurance Company.
Daniel S. Pearson, Leslie King O'Neal, Mary Beth Cantrell and Gregory J. Johansen of Holland & Knight LLP, Orlando, for Appellee.
PER CURIAM.
This appeal arises from the trial court's award of statutory attorneys' fees and costs to Martin County ("the County"), stemming from the County's underlying breach of contract action against Centex Rooney Construction Company, Inc. ("Centex") and the Sureties in this "sick building case." We affirm in part and reverse in part the award of attorneys' fees and costs.
The County sought damages against Centex, the construction manager, for the defective and improper construction of the Martin County courthouse ("courthouse") and Constitutional *1257 office building ("office building"). During trial, the parties relied on the testimony of numerous experts, whose specializations included structural and electrical engineering, microbiology, and indoor air quality. At the conclusion of the five-week trial, the jury returned a verdict in the amount of $11,550,000, which the court reduced by $2,750,000, the amount received by the County in pretrial settlements with several subcontractors. The County ultimately recovered a final judgment of $14,211,156, including interest, against Centex and the Sureties, which this court affirmed. See Centex-Rooney Constr. Co., Inc. v. Martin County, 706 So.2d 20 (Fla. 4th DCA 1997), rev. denied, 718 So.2d 1233 (Fla.1998). As part of the judgment, the trial court ruled that the County was entitled to an award of attorneys' fees and costs and retained jurisdiction to determine the amount.
The County moved for an award of statutory attorneys' fees and costs against Centex and the Sureties. Judge Kanarek, who presided over the case for three years of pretrial litigation and conducted the five-week jury trial, held a three-day evidentiary hearing to determine the amount of attorneys' fees and costs to be awarded to the County. During this hearing, the County submitted voluminous records, which were admitted into evidence, to support its attorney fee and cost application, and its lead trial attorney from the Orlando office of Holland & Knight ("H & K"), Leslie O'Neal ("O'Neal"), testified at length about case management and the complexities of the case. The County sought a total of $1,878,932.00 in attorneys' fees and $1,318,668.28 in costs against Centex and the Sureties, encompassing the five year period from August of 1991 through July of 1996.
The County retained H & K as its counsel in 1991 for representation with respect to the issues arising out of the construction of the courthouse and office building. Four primary attorneys from H & K were involved in the preparation and trial of the County's case, each handling discrete aspects of the litigation. The prosecution of the County's construction case against Centex and the Sureties was a massive undertaking. During pretrial discovery, H & K's lawyers reviewed hundreds of thousands of documents; interviewed and took depositions of over seventy lay and expert witnesses; and researched a myriad of legal, factual, and technical issues, which encompassed areas of microbiology, structural and electrical engineering, and air conditioning design and installation. The facts and issues in the construction litigation constantly evolved and became significantly more complex. The ongoing redesign and reconstruction of the buildings, which was the subject of the lawsuit, created complications in the case, and the discovery of each new problem resulted in the necessity for additional experts, witnesses, research, and analysis. Due to the intricate and highly technical nature of the issues involved, the presentation of the County's case to the jury required a high level of lawyering skill. Voluminous discovery occurred, requiring H & K to develop a computer program to catalogue the thousands of documents.
Following the evidentiary hearing, the court entered its final judgment on attorneys' fees and costs, containing detailed findings of fact and conclusions of law supported by relevant statutes and case law. After making necessary deductions for items which it deemed unrecoverable, the court awarded the County $1,813,701.00 in attorneys' fees against the Sureties; $618,598.50 in attorneys' fees against Centex; and $1,188,798.07[1] in costs against Centex and the Sureties, jointly and severally. The judgment specified that the attorneys' fees awarded to the County against the Sureties included the amount of attorneys' fees awarded against Centex, noting that the County was entitled to "only one recovery of this amount from the Sureties or from Centex-Rooney." Centex and the Sureties appeal from this final judgment.

I. THE AWARD OF ATTORNEY'S FEES
Centex contends that this court should reduce the County's overall attorneys' fee *1258 award by thirty-five percent in light of its allegations that H & K expended an unreasonable number of hours in prosecuting the County's case. More specifically, Centex asserts that the trial court erred in: (1) failing to reduce the award for H & K's unnecessary duplication of legal services; (2) failing to deduct fees for H & K's litigation of claims unrelated to Centex and the Sureties; and (3) awarding fees for H & K's travel time, office set-up, attendance at County Commission meetings, and media interface. The County disputes these assertions, claiming that "Centex and the Sureties [are] attempt[ing] to re-litigate the facts presented in the trial court" in this appeal.
It is well settled that the determination of an award of attorneys' fees is within the sound discretion of the trial court and will not be disturbed on appeal, absent a showing of a clear abuse of that discretion. See DiStefano Constr., Inc. v. Fidelity and Deposit Co. of Maryland, 597 So.2d 248, 250 (Fla.1992); Elliot v. Pallotti, 654 So.2d 1300, 1302 (Fla. 5th DCA 1995). The trial court's findings of fact with regard to an award of attorneys' fees are presumed to be correct, see Alternative Development, Inc. v. St. Lucie Club & Apartment Homes Condominium Ass'n, 608 So.2d 822, 828 (Fla. 4th DCA 1992), and the appellate court should not substitute its judgment for that of the trial court. See G.H. Johnson Constr. Co. v. A.P.G. Elec., Inc., 656 So.2d 566, 567 (Fla. 2d DCA 1995); see also Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)(trial court's discretion in determining attorneys' fee award is appropriate in view of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters").
In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985), the supreme court adopted the federal lodestar approach as the foundation for setting reasonable fee awards. "This approach requires the trial court to determine a `lodestar figure' by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney." Fashion Tile & Marble v. Alpha One Constr., 532 So.2d 1306, 1308 (Fla. 2d DCA 1988). In undertaking this analysis, the trial court must consider separately the reasonableness of the hourly rate and the number of hours expended. See Rowe, 472 So.2d at 1150-51.
"Reasonably expended" means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute. It is not necessarily the number of hours actually expended by counsel in the case. Rather, the court must consider the number of hours that should reasonably have been expended in that particular case.... In this respect, the magnitude of the case should be a consideration.
In re Estate of Platt, 586 So.2d 328, 333-34 (Fla.1991)(emphasis in original). In determining the reasonableness of attorneys' fees, the court should utilize the following criteria:
(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
Rowe, 472 So.2d at 1150.
Upon considering the evidence adduced during the evidentiary hearing, the trial court made the following findings relative to the criteria enumerated in Rowe: (1) "this was a complex case, involving some difficult and novel questions," requiring a high level of skill; (2) H & K's acceptance of this engagement precluded it from handling *1259 other matters during late 1995 and early 1996; (3) H & K's fee was reasonable for similar legal services in this locality; (4) "[t]he amount involved in the case was substantial and the results obtained were excellent;" (5) the court imposed some time limitations on the parties; (6) H & K had no prior professional relationship with the County; (7) the H & K attorneys involved in the case were "able, experienced, and had excellent reputations;" and (8) the fee was fixed with no contingency.
Given the trial judge's first-hand knowledge of the case, his superior understanding of the litigation, and his extensive contact with the parties and their counsel before, during, and after the five-week trial, he was in the best position to evaluate the reasonableness of the County's fee application and determine the attorneys' fee award. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1057-58 (2d Cir. 1989), cert. denied, 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990). Thus, the trial court did not abuse its discretion because there is competent, substantial evidence in the record supporting its determination of the number of hours expended on the litigation of the County's case. See Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir.1997).

A. NO DUPLICATION OF LEGAL SERVICES
"Where a party engages separate counsel to represent it on various aspects of an action, attorney's fees to each counsel are not precluded provided that the services rendered are necessary, not duplicative, and the total fee is reasonable." Florida Drilling & Sawing v. Fohrman, 635 So.2d 1054, 1055-56 (Fla. 4th DCA 1994); see also Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir.1988). Although the fee applicant has the burden of establishing its entitlement to an award of attorneys' fees, see Hensley, 461 U.S. at 437, 103 S.Ct. 1933, the opponent of the fee has the burden of pointing out with specificity which hours should be deducted. See Nitram, Inc. v. Industrial Risk Insurers, 154 F.R.D. 274, 277 (M.D.Fla.1994) (citations omitted); see also Norman, 836 F.2d at 1301 (fee opponent must be reasonably precise in objecting to and proving existence of unreasonable or unnecessary attorney hours).
Centex claims that H & K utilized numerous legal personnel during the course of the litigation, thereby resulting in "duplicative and excessive hours." Although thirty-five attorneys and twenty-nine paralegals from H & K worked on the County's case at some point during the five year litigation, only seventeen of these individuals billed more than thirty hours. Notwithstanding Centex's fee expert's criticism of H & K's staffing in what he classified as a "typical construction defect case," he was unable to point to a single example of overstaffing. In response to Centex's complaint about several "changes in command" at H & K, O'Neal testified that she did not bill the County for the time spent by new attorneys "getting up to speed" or for all of the time that she spent on the case, even during trial. Thus, she made a "good faith effort to exclude from [the] fee request hours that [were] excessive, redundant, or otherwise unnecessary," thereby exercising appropriate "billing judgment." Hensley, 461 U.S. at 434, 103 S.Ct. 1933 (quotation omitted).
Without citing any legal authority, Centex requests a reduction in the fee award to account for the fees of H & K's attorneys who had worked on the County's case but ultimately left the firm during the course of the litigation. We find no merit in this contention given O'Neal's testimony that these attorneys created the discovery plan, which H & K utilized throughout the case, and provided invaluable assistance by drafting the mediation and arbitration presentations, working on trial exhibits, and assisting in drafting the opening and closing statements for trial. Centex's complaint about H & K's administration of numerous "team meetings" is similarly uncompelling, given O'Neal's unrefuted testimony that she held these monthly meetings, which lasted about an hour, to coordinate the innumerable activities of the attorneys and paralegals in this complex case and to avoid any duplication of efforts. Cf. Mokover v. Neco Enterprises, Inc., 785 F.Supp. 1083, 1090 (D.R.I.1992) (reduced *1260 number of hours billed for "conferences with co-counsel" where case's "simplicity" did not warrant co-counsel).
Centex further asserts that the County had numerous attorneys at trial who billed an excessive amount of hours. However, there was substantial evidence in the record detailing the innumerable complexities involved in this highly technical case, thereby justifying H & K's need for several attorneys to handle specific aspects of the litigation. Cf. Student Pub. Interest Research Group v. Monsanto Co., 721 F.Supp. 604, 612 (D.N.J.1989)(presence of greater than one attorney at trial excessive where case not "unduly difficult, complex, or novel"). Centex's complaint about the "multiplicity of attorneys at trial" on behalf of the County is particularly unpersuasive since it, too, had at least five attorneys and one paralegal who participated in its defense at trial.
As the trial court aptly found, Centex failed to meet its burden of demonstrating with sufficient specificity that H & K duplicated its legal services. See Nitram, 154 F.R.D. at 277. Insofar as the trial court was in the best position to resolve this "staffing issue" due to its "familiarity with the case's `nuances and idiosyncracies,'" we find no error nor any duplication of services. See Van Dorn Retail Management v. Jim's Oxford Shop, Inc., 874 F.Supp. 476, 489 (D.N.H. 1994), aff'd, 45 F.3d 424 (1st Cir.1995) (quotation omitted).

B. NO UNRELATED FEES
Centex urges that the fee award was excessive because it included fees for H & K's litigation of purportedly unsuccessful claims and claims against settling subcontractors, which included the project architect, mechanical engineer, concrete and masonry construction company, and air conditioning system installer. The County, on the other hand, asserts that it deducted $388,257.00 from its total attorneys' fees for time spent litigating claims unrelated to Centex and the Sureties, duly reflected in its revised billing invoices. At the fees hearing, O'Neal explained that, in preparing these revised invoices, H & K did not deduct every time entry relating to the settling defendants because H & K needed to discover their records and take depositions of their personnel to prosecute the County's claims against Centex and the Sureties and to counter Centex's defense that these defendants had caused the County's damages. Even Centex's fee expert conceded that several issues regarding the settling defendants remained in the case after the County's settlement with those parties.
Moreover, as the trial court found, the County's case did not consist of a series of discrete claims; instead, it involved a "common core of facts" premised on related legal theories concerning the design and construction of the courthouse and office building. Thus, a significant portion of H & K's time was devoted generally to the litigation as a whole, thereby "making it difficult to divide the hours expended on a claim-by-claim basis." Hensley, 461 U.S. at 435, 103 S.Ct. 1933. In this circumstance, the trial court was required to focus on the "significance of the overall relief" obtained by the County in relation to the hours reasonably expended on the litigation. Id.; see also Norman, 836 F.2d at 1302 (where theories derive from "common core of operative facts," focus should be on significance of overall results as function of reasonable hours). By obtaining an $11,550,000 jury verdict and $14,200,000 final judgment, the County indisputably prevailed in its claims against Centex and the Sureties. Where, as here, the plaintiff obtained "excellent results," its attorney is entitled to recover a fully compensatory fee, typically encompassing all hours reasonably expended on the litigation. See Hensley, 461 U.S. at 435, 103 S.Ct. 1933. In this circumstance, the trial court did not abuse its discretion in refusing to reduce the fee award simply because the County "failed to prevail on every contention raised in the lawsuit." Id.; see also B & H Constr. & Supply Co. v. District Bd. of Trustees of Tallahassee Community College, Florida, 542 So.2d 382, 388-89 (Fla. 1st DCA 1989)(upheld refusal to reduce fee award in case involving numerous claims and significantly complex determination of time expended on litigation of successful and unsuccessful claims).

*1261 C. TRAVEL, OFFICE SET UP, AND MEDIA RELATIONS
Centex attacks the attorneys' fees awarded to the County for H & K's travel time and its establishment of a temporary local office in Vero Beach for trial. Given the testimony that no local law firm had both the resources and expertise to handle such a complex case, we find no error in allowing recovery for the travel time billed to the County by H & K, as the County did not act unreasonably in employing the firm. See Wright v. Wright, 577 So.2d 1355, 1358 (Fla. 1st DCA 1991). We distinguish Fence Wholesalers of America, Inc. v. Beneficial Commercial Corp., 465 So.2d 570 (Fla. 4th DCA 1985), and Gwen Fearing Real Estate, Inc. v. Wilson, 430 So.2d 589, 591 (Fla. 4th DCA 1983), in which we disallowed travel time where there was no showing of a lack of local counsel who would be competent to take the case. In complex construction cases of this type, firm resources to manage the volume of discovery are essential. The law firm was capable of providing such resources. Based upon the evidence before the court, we find that the trial court did not abuse its discretion in including travel time in the award.
We do, however, reverse the award of time charged to set up and dismantle an office in Vero Beach, the site of the trial. Although O'Neal testified that "all we had to do was show up and plug in our stuff," the records showed attorney time and staff time of $12,895 for this task.[2] While it may have simplified the life of the attorneys during trial, we find no authority to award these fees to the County.
We also reverse the award of attorneys' fees constituting "media relations" time, which H & K billed for dealing with the media. The lawyers asserted that some contact was necessary to deflect media criticism of the County's position in the lawsuit. While for the purposes of the public image of the County Commission with its citizens such contact might have been necessary, it is not appropriate to bill the losing party for such "image making." It did nothing to further the litigation.

II. COSTS
Centex challenges the fees paid to various experts, claiming that duplication and unnecessary travel time was charged. The trial court rejected these claims, and its findings are supported by the record.
We do, however, reverse the award of certain administrative expenses of CH2M Hill, the expert engineers. Although the trial court reduced CH2M Hill's total fee award by some administrative costs, it appears that several of the expenses listed in their invoices, such as meals (other than business meals), equipment, postage and freight, equipment maintenance, printing, communication charges, temporary help, documents processing, graphics and similar administrative expenses were improperly taxed as costs. See Seigler v. General Leisure Corp., 289 So.2d 429, 430 (Fla. 1st DCA 1974)(overhead, clerical, and administrative expenses incurred by experts not taxable as costs). On remand, we direct that these expenses be deducted from the total.
As to the fees for Norman Nelson, owner of Building Systems RX, a ventilation expert, we reverse that portion of the award which includes in-person and telephone conferences with H & K's trial team, as the costs for the expert's conferences with attorneys prior to trial are not taxable. See Thellman v. Tropical Acres Steakhouse, Inc., 557 So.2d 683, 684 (Fla. 4th DCA 1990); James P. Driscoll, Inc. v. Gould, 521 So.2d 301, 302 (Fla. 3d DCA 1988); Statewide Uniform Guidelines for the Taxation of Costs in Civil Actions (hereinafter Uniform Guidelines), cost item 2B. Similarly, Nelson's numerous fees for preparation of memoranda to H & K and the provision of "litigation assistance" to H & K were not properly taxable against Centex or the Sureties.
CH2M Hill contracted with Mark Williams of Williams Building Diagnostics ("WBD") to *1262 provide design alternatives for the buildings and to actually fix the buildings. Pursuant to WBD's retainer with H & K, Williams performed an investigation to determine the cause of water intrusion into the buildings and presented expert opinion testimony at trial regarding the results. The court properly awarded WBD's costs for airfare, hotel, rental car, mileage, parking, etc. as incidental travel expenses. See C.B.T. Realty Corp. v. St. Andrews Cove I Condominium Ass'n, 508 So.2d 409, 410-11 (Fla. 2d DCA 1987). However, the court's taxation of WBD's expenses for supplies, rental equipment, shipping, photocopying, and faxing constituted reversible error. See Seigler, 289 So.2d at 430. Accordingly, on remand the cost award should be reduced by the total amount of overhead expenses billed by WBD.
We have examined the remaining points raised as to the expert witness fees and their support services, particularly the claim that the fees were excessive. We have been aided by the detailed findings of fact made by the trial court. These findings fully set forth the court's justification for allowing the fees and appear to be within the "broad discretion" of the trial court in awarding expert fees. See Thursby v. Reynolds Metals Co., 466 So.2d 245, 253 (Fla. 1st DCA 1984). We therefore affirm.
Centex also claims that the court's taxation of the County's costs for receiving daily transcripts was in error. Item 8 of the Uniform Guidelines, specifies that "only the cost of such portion as may be used for impeachment should be taxed. Portions used for consultation with the client or other expert witnesses should not be taxed." Although we have noted that a trial court may deviate from the guidelines costs where the facts of the case or justice may require, see Madison v. Midland National Life Insurance Co., 648 So.2d 1226, 1228 (Fla. 4th DCA 1995), at the cost hearing O'Neal testified only that the trial transcripts were "necessary, reasonable, and related" to H & K's preparation and trial of the County's case. While most attorneys would agree that preparation for trial would be enhanced by daily transcription of the previous witnesses, it is not a cost that should be routinely taxed against an opponent. Here, there was no evidence that the daily or expedited transcripts were used at trial, nor did the court make any finding at all regarding the necessity of the expedited transcripts. We therefore reverse this award.
Finally, the trial court taxed $19,407.53 against Centex for the costs of court-ordered mediation and arbitration, which included the County's payment of $8,872.25 for a portion of the arbitration fees which had been unpaid by Inscho-Kirlin, one of the settling defendants. Centex specifically contests its responsibility for Inscho-Kirlin's share of the arbitration fees. Relying on section 44.103(6), Florida Statutes (1995), the County asserts that Centex was responsible for this amount because it filed a motion for trial de novo upon receiving the arbitrator's decision and did not obtain a more favorable result. Section 44.103, the non-binding arbitration statute, provides in relevant part that:
(6) The party having filed for a trial de novo may be assessed the arbitration costs, court costs, and other reasonable costs of the party, including attorney's fees, investigation expenses, and expenses for expert or other testimony or evidence incurred after the arbitration hearing if the judgment upon the trial de novo is not more favorable than the arbitration decision.
Insofar as the statutory provision specifically provides for the assessment of arbitration costs against Centex, the trial court did not abuse its discretion in placing ultimate responsibility for the arbitration fees on Centex. We thus affirm.
As to any issues not specifically discussed, we have reviewed the record and the arguments and affirm.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
WARNER, FARMER, JJ., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] The trial court subsequently amended this amount to $1,188,798.07 in order to correct its miscalculation of the cost award.
[2] The amount of set-up costs comes from an exhibit of appellant. We do not determine whether that number is accurate, and the trial court on remand is free to determine from the evidence the actual billings attributable to office set-up.