984 So.2d 526 (2008)
CURRENT BUILDERS OF FLORIDA, INC., Appellant,
v.
FIRST SEALORD SURETY, INC., Appellee.
Nos. 4D06-4076, 4D07-132.
District Court of Appeal of Florida, Fourth District.
April 2, 2008.
Opinion on Rehearing June 4, 2008.
*528 Vincent F. Vaccarella and Jordan M. Keusch of Vincent F. Vaccarella, P.A., Aventura, for appellant.
John J. Shahady and Thomas R. Shahady of Adorno & Yoss LLP, Fort Lauderdale, for appellee.
WARNER, J.
A contractor appeals a final judgment in its favor against its subcontractor for breach of contract, but finding no liability on behalf of the subcontractor's surety. The contractor appeals and the surety cross-appeals the court's award of attorney's fees. We have consolidated these cases for purposes of this opinion. The contractor contends that the judgment for the surety was against the manifest weight of the evidence, and the court erred in failing to grant an additur because the amount of damages the jury awarded against the subcontractor was grossly insufficient. We affirm the judgment in favor of the surety, as the contractor failed to comply with the provisions of the bond required to initiate the surety's obligations. We reverse the damage judgment against the subcontractor as the verdict was legally inadequate. As to the attorney's fees judgment, we reverse because the court did not award the surety the full amount of its attorney's fees.
Current Builders of Florida, Inc. ("CB") acted as the general contractor for the construction of The Residences at Miramar. It entered a subcontract agreement with Morgado Plumbing Corporation to install the plumbing fixtures in the project. The subcontract required Morgado to obtain a surety and furnish CB with a performance bond. Pursuant to this provision, CB, Morgado, and First Sealord Surety, Inc. executed a subcontract payment bond agreement, prepared by CB, in the amount of the contract.
Early on, CB was unhappy with Morgado's performance. It wrote several letters to Morgado and First Sealord complaining of Morgado's performance. Each letter declared Morgado in default and demanded that First Sealord be responsible for any delays or damages. However, it did not terminate Morgado until a year into the project, upon learning from a state-run website that Morgado's workers' compensation insurance had lapsed. CB hired another plumbing company to correct and complete Morgado's work and notified both Morgado, who responded that it did have insurance, and First Sealord, who did not respond.
CB filed a complaint against First Sealord for breach of the performance bond. Subsequently, Morgado filed a complaint against CB alleging breach of the subcontract by failing to make payroll payments. *529 CB then counterclaimed against Morgado for breach of the subcontract. In defense of the counterclaim, Morgado argued that its duties under the subcontract were discharged due to CB's failure to comply with the subcontract's termination provision which required that the general contractor, prior to termination, send the subcontractor written notice of intent to terminate and allow the subcontractor three days to cure the default.
The court consolidated these three claims and ordered the parties to arbitrate. Because the arbitrator found in favor of Morgado and First Sealord, and against CB, CB elected to proceed to trial. The issues at trial were: (1) whether Morgado breached the subcontract and, if so, the amount of damages, or whether Morgado's duties under the subcontract were discharged due to CB's wrongful termination; (2) whether First Sealord received proper notice under the performance bond; and (3) whether CB breached the subcontract and, if so, the amount of damages.
At trial, CB presented evidence regarding Morgado's breach of the subcontract. Problems arose soon after Morgado began installing the plumbing. CB would document these problems with letters addressing each issue and declaring Morgado in default. First Sealord received copies of these letters. On the other hand, Morgado presented evidence that its problems were a result of various actions taken by CB which delayed Morgado's performance, and CB wrongfully terminated Morgado for failing to have current workers' compensation insurance while Morgado's insurance coverage was in place.
A July letter from CB to Morgado, and copied to First Sealord, constituted the notice of default of Morgado. In it, CB informed Morgado that it considered Morgado to be in default of the subcontract for failing to have sufficient workforce to meet its project schedules and for failing to have proof of insurance. Several days later CB sent a second letter to Morgado, with a copy to First Sealord, notifying it that CB had removed Morgado from the permits and hired another plumbing company to finish the job. CB did not agree to pay First Sealord the contract balance, which First Sealord contended was required under the bond.
First Sealord's vice president, Brian Fortay, testified to its obligations under the bond and the notice requirements to initiate its duties. He explained that the surety requires a definite "trigger" declared by the contractor before it will commence performance of its bond obligation, because it does not want to be liable for interfering with the contractor-subcontractor relationship. Fortay testified that to trigger the surety's obligations under the bond, the letters from CB to Morgado and copied to First Sealord "would have had to have a declaration of default, a termination, and probably an agreement that they're going to release the remaining project funds to the surety." The company's position was that so long as the subcontractor was working despite the "notices of default," all matters required for the surety's obligation to arise had not occurred. Thus, none of the so-called "notice of default" letters constituted proper notice to trigger First Sealord's performance under the bond. As Fortay testified:
Again, we act when our bond is triggered. I mean, that's what happens. You got to follow the language of the bond; otherwise, surety companies would have to react to everything that goes on all over the country in every single construction project. You'd have no surety companies. That's why the bond language is there. It's there to show the surety when and how they have to act. And it's also there to make *530 sure that the bond obligee does what they're supposed to do to trigger the bond.
When First Sealord received the letter which CB maintained was the termination letter, Fortay testified that it did not terminate Morgado in accordance with the terms of the contract. Because CB had not followed the terms of the contract in terminating Morgado, First Sealord's bond obligations were not triggered. In any event, CB never tendered the contract balance to First Sealord.
A new plumbing company finished the project, and CB paid it over $800,000 to complete and correct the plumbing work under the subcontract. The overrun on the plumbing contract amounted to at least $682,230.
After the presentation of the evidence and various motions for directed verdict, the jury returned the following verdict: (1) Morgado breached the subcontract with CB and, as a result, CB sustained $30,000 in damages, thereby rejecting Morgado's wrongful termination defense; (2) First Sealord did not receive proper notice under the performance bond, thus discharging the surety's liability on the bond; and (3) CB breached the subcontract with Morgado but was not liable for any damages. The court entered a final judgment in accordance with the jury's verdict.
Post-trial, CB requested the court to enter a judgment notwithstanding the verdict on the liability issue, enter an additur increasing the damages award to $686,230, or, in the alternative, order a new trial on the issue of damages. The trial court denied this motion and Morgado's motion for judgment notwithstanding the verdict on CB's claim. Both parties appealed the final judgment and orders.
First Sealord also moved for fees and costs incurred subsequent to the arbitration award, pursuant to section 44.103(6), Florida Statutes (2006). The same attorney represented Morgado and First Sealord throughout the proceedings, and because of that the court awarded First Sealord only half of its attorney's fees, finding Morgado would be liable for the remainder. Both parties appeal the final order on attorney's fees.
As its first issue, CB argues that the court erred in not granting a new trial, because the jury's verdict finding that First Sealord had not received proper notice under the performance bond was contrary to the manifest weight of the evidence. When ruling on a motion for new trial on the ground that the verdict is contrary to the manifest weight of the evidence, a trial court exercises broad discretion. Brown v. Estate of Stuckey, 749 So.2d 490, 492, 494 (Fla.1999). We review such decisions under an abuse of discretion standard. Id. at 494.
First Sealord's liability as surety depended upon whether CB complied with the performance bond. A bond is a contract and is subject to the general laws of contracts. Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd., 593 So.2d 195, 197 (Fla.1992).
Paragraph 4 of the performance bond addresses the manner by which First Sealord's obligation to perform arises:
4. If there is no Contractor Default,[1] the Surety's obligation under this Bond shall arise after:
4.1 The Contractor has notified the Subcontractor and the Surety . . . *531 that the Contractor is declaring the Subcontractor in Default, of any Sub-subcontractors' obligations under the Contract, (including punch list warranty items after substantial completion); or
4.2 The Contractor has declared a Subcontractor Default and formally terminated the Subcontractor's right to complete the Contract; and
4.3 The Contractor has agreed to pay the Balance of the Contract Price, if any, to the Surety in accordance with the terms of the Construction Contract or to a subcontractor selected by Surety to perform the Construction Contract in accordance with the terms of the Contract with the Contractor.
In light of the "or" separating sections 4.1 and 4.2, First Sealord's obligations arise if CB complies with either 4.1 or both 4.2 and 4.3. Section 4.1 does not apply, because no sub-subcontractor was involved.
As to section 4.2 and 4.3, CB produced evidence of letters showing a declaration of a default, but Fortay testified that those did nothing to trigger the obligation of First Sealord, because Morgado continued to work. Fortay also testified that the "termination letter" did not comply with the termination provisions of the contract and did not trigger First Sealord's obligations. CB notified Morgado that a new contractor had been hired to replace Morgado. CB did not, however, give notice to First Sealord that it agreed to pay the balance of the contract to the surety or to a subcontractor selected by the surety. Instead, CB took over those obligations and thus did not permit the surety to perform under the bond. First Sealord argued to the jury that this was part of CB's obligation which it did not fulfill. CB offered no evidence regarding the bond obligations to counter Fortay's testimony. The jury found First Sealord did not receive proper notice. Fortay's testimony provided competent evidence that First Sealord did not receive proper notice to invoke its obligations under the bond. The trial court exercised its broad discretion in denying the motion for new trial, in light of all of the evidence in the case, and we do not conclude that it abused its discretion. Stuckey.
Although the jury did not find the surety liable on the bond, it found liability on Morgado for breach of contract. Even though CB presented evidence of damages between $600,000 and $800,000, the jury awarded only $30,000 in damages. CB moved for additur or new trial regarding the jury's award.
Section 768.74, Florida Statutes, governs additur and applies "to any action for damages, whether in tort or in contract." § 768.71(1), Fla. Stat. (2006). Section 768.74(1) provides that in an action resulting in a verdict for money damages to the plaintiff,
it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is . . . inadequate in light of the facts and circumstances which were presented to the trier of fact.
Section 768.74(5) directs courts to consider various factors including:
(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account *532 or arrived at the amount of damages by speculation and conjecture;
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
Accordingly, "[i]f the court finds that the amount awarded is . . . inadequate, it shall order . . . additur, as the case may be." § 768.74(2), Fla. Stat.
We applied these criteria in Silverman v. Gockman, 714 So.2d 671 (Fla. 4th DCA 1998), and found that a jury award of $250,000 in a medical malpractice claim where the evidence proved $520,975.65 in damages was inadequate, pointing out that the trial court had overlooked section 768.74(5)(d), which provides that the amount awarded should bear a reasonable relation to the damages proved. Likewise, in Arena Parking, Inc. v. Lon Worth Crow Insurance Agency, 768 So.2d 1107, 1110 (Fla. 3d DCA 2000), where the evidence proved damages of $170,000 but the jury awarded only $28,500 in damages, the court determined:
The amount awarded could only have been arrived at by speculation and conjecture because it bears no reasonable relation to the damages proved. There is no logical explanation as to how reasonable persons . . . ended up awarding only 16% of the damages claimed.
The court concluded that an additur should have been granted, pursuant to section 768.74.
This case is similar in that the damages awarded by the jury have no relation to the damages proved at trial. CB's chief financial officer, Fredrick Colandreo, testified to the amount of damages incurred as a result of Morgado's default. He calculated the damages based upon the "overrun" on the plumbing work alone at $682,230, consisting of corrections to Morgado's plumbing work and the amount paid to complete the unfinished portion of the contract. Morgado did not dispute CB's calculations. Instead, it argued that the corrections to the plumbing work were due to CB's hiring of substandard workers to supplement Morgado's workforce when Morgado faced staffing issues. However, it offered no proof of the amount of damages caused by the substandard workforce.
Notwithstanding Morgado's explanation, the jury's $30,000 damages award does not "bear[] a reasonable relation to the amount of damages proved and the injury suffered." § 768.74(5)(d), Fla. Stat. The jury awarded only 4% of that proved by CB. In addition, the $30,000 damages award appears to have been "arrived at . . . by speculation and conjecture." § 768.74(5)(c), Fla. Stat. There is no evidence in the record to support this particular amount. Therefore, the trial court abused its discretion in failing to grant CB's motion for additur or, in the alternative, a new trial. We reverse for the trial court to order an additur and, should Morgado refuse to accept, for a new trial on damages. See § 768.74(4), Fla. Stat.[2]
After the trial First Sealord moved for all fees and costs incurred subsequent to the arbitration award, pursuant to section 44.103(6), Florida Statutes (2006), which provides: "The party having filed for a *533 trial de novo may be assessed" reasonable costs and fees "incurred after the arbitration hearing if the judgment upon the trial de novo is not more favorable than the arbitration decision." While the arbitrator found that CB had given proper notice of termination and First Sealord was in default of the performance bond, the jury's contrary finding was more favorable to First Sealord. However, the arbitrator also found that CB had failed to comply with the subcontract when terminating Morgado, and thus its contractual obligations were discharged. The jury verdict was more favorable to CB on this issue, in that it found Morgado liable and awarded CB damages. Concluding that the verdict was not more favorable than the arbitration award as to First Sealord, the court granted First Sealord's motion as to entitlement and set a hearing to determine the amount.
At this hearing, Morgado and First Sealord's attorney, Thomas Shahady, testified that subsequent to arbitration, his firm incurred $130,093.50 for work done on behalf of both entities; however, First Sealord paid all the fees. Morgado and First Sealord's expert claimed it was impossible to distinguish which fees were incurred on behalf of First Sealord and which were incurred on behalf of Morgado. Therefore, the claims were inextricably linked, and CB was liable for all fees incurred following arbitration. CB's expert testified that First Sealord, as prevailing party, was entitled to fees only for the time expended solely for its benefit. The amount of time the expert concluded was spent on First Sealord's notice defense amounted to $5,067.
Finding the hours and rates reasonable, the court awarded only one-half of the $130,093 amount to First Sealord, because the representation was completely intertwined, with one attorney representing both defendants. Both parties appeal, CB claiming that First Sealord should be limited to the $5,067, and First Sealord claiming that it was entitled to the full amount of its attorney's fees, because the issues were inextricably intertwined.
In Centex-Rooney Construction Co. v. Martin County, this court held that "the determination of an award of attorneys' fees is within the sound discretion of the trial court and will not be disturbed on appeal, absent a showing of a clear abuse of that discretion." 725 So.2d 1255, 1258 (Fla. 4th DCA 1999). The lower court's "findings of fact with regard to an award of attorneys' fees are presumed to be correct. . . ." Id. "However, the determination of whether multiple claims within a lawsuit are separate and distinct is a matter of law to be reviewed de novo." Anglia Jacs & Co. v. Dubin, 830 So.2d 169, 171 (Fla. 4th DCA 2002). "[T]he party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." Chodorow v. Moore, 947 So.2d 577, 579 (Fla. 4th DCA 2007) (alteration in original) (quoting Lubkey v. Compuvac Sys., Inc., 857 So.2d 966, 968 (Fla. 2d DCA 2003)).
Recently, we examined the principles to be applied in making an award of attorney's fees involving inextricably intertwined claims in Chodorow. We said:
In the event a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims and "where the claims involve a `common core' of facts and are based on `related legal theories,' a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on *534 counts as to which no attorney's fees were sought [or were authorized]."
Id. (emphasis omitted) (alteration in original) (quoting Anglia Jacs, 830 So.2d at 172); see also Caplan v. 1616 E. Sunrise Motors, Inc., 522 So.2d 920, 922 (Fla. 3d DCA 1988).
Both First Sealord's expert and the trial court found that the claims regarding the breach of contract and those involving First Sealord's liability were inextricably intertwined. CB attempts to limit the claim for which attorney's fees are liable to the issue of notice of the default, because that is the only claim on which First Sealord prevailed.
We agree with First Sealord that the issues tried regarding its liability were inextricably intertwined with CB's breach of contract claim against Morgado. They involved a common core of facts. First Sealord's liability depended upon Morgado's breach of contract, as well as the proper notification of the breach and termination by CB. It could not defend one without defending the other. The attorneys could not separate the fees, and the trial court erred in making an arbitrary division of the fees. First Sealord is entitled to its full fees, as well as its costs incurred after the arbitration proceeding.
For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.
FARMER and GROSS, JJ., concur.

ON MOTION FOR REHEARING
WARNER, J.
In moving for rehearing, Current Builders suggests that our ruling on First Sealord's motion for attorney's fees is contrary to Franzen v. Lacuna Golf Limited Partnership, 717 So.2d 1090 (Fla. 4th DCA 1998), which was followed in Froman v. Kirland, 746 So.2d 1120 (Fla. 4th DCA 1999). We disagree. Although in Franzen we reversed for reapportionment of fees, the attorney expert in that case did not attempt to distinguish between fees incurred regarding successful claims as opposed to the unsuccessful claims. Here, on the contrary, both attorneys, their experts, and the court concluded that the successful claims were inextricably intertwined with the unsuccessful claims. Thus, this factual difference between Franzen and this case dictates the different result. We do, however, grant rehearing to the extent that the amount of the fees should be limited to $125,000, the amount requested in First Sealord's brief.
FARMER and GROSS, JJ., concur.
NOTES
[1] The bond defines "Contractor Default" as "[f]ailure . . . to pay the Subcontractor as required by the Construction Contract."
[2] We affirm on Morgado's cross-appeal claiming that a directed verdict should have been granted in its favor on CB's breach of contract action, because the issue was not properly preserved. Morgado failed to renew its motion at the close of all the evidence. Nordyne, Inc. v. Fla. Mobile Home Supply, Inc., 625 So.2d 1283, 1285 (Fla. 1st DCA 1993).