DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**22ND CENTURY PROPERTIES, LLC**
and **DAVID F. DAMERAU,**
Appellants,

v.

**FPH PROPERTIES, LLC,**
Appellee.

No. 4D13-3537

[April 1, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; John J. Murphy, III, Judge; L.T. Case No. 06-09583 (21).

Justin R. Infurna of The Infurna Law Firm, P.A., Orlando, for appellants.

Matthew C. Sanchez, Benjamin E. Olive, and Kara L. Strochlic of Hackleman, Olive & Judd, P.A., Fort Lauderdale, for appellee.

GROSS, J.

This case arises from a real estate venture gone awry. In 2002, appellants 22nd Century Properties, LLC and its principal, David Damerau, entered into a contract with appellee FPH Properties, LLC ("FPH") whereby FPH agreed to front appellants money to purchase and develop three properties for profit. When the dust settled, only two properties sold and Damerau occupied the third as his homestead. As to the two sold properties, FPH discovered that appellants had falsified documents to maximize their share of the profit and minimize that of FPH. FPH brought suit and obtained a final judgment in excess of $1,500,000.

This appeal concerns a $631,969.50 attorney's fee award pursuant to the offer of judgment statute. As their primary issue, appellants assert the award constitutes an abuse of discretion since it includes charges for excessive, duplicate, and unnecessary billing entries. Given the twisty, expansive development of the case and appellants' elaborate attempts to shield discovery of their fraud, we find no error in the attorney's fees award and affirm.

## Factual Background

Appellants entered into an agreement with FPH for the express purpose of acquiring, renovating or developing, and selling for profit single family homes in South Florida. FPH agreed to contribute capital to purchase the properties, 22nd Century promised to develop and renovate the properties, and Damareu guaranteed 22nd Century's obligations. Before purchasing property, 22nd Century was obligated to provide FPH a "pro forma" outlining the terms of the proposed purchase, renovation, and ultimate sale. If Damareu or anyone affiliated with him had an interest in the proposed property, the agreement required disclosure.

The financial parameters of the deal were that FPH agreed to invest up to $500,000 per property, contingent upon the pro forma. Following the sale of a property, the proceeds were to be distributed as follows: first, FPH would be paid back its investment as well as 9% interest; second, 22nd Century could retain the remainder up to the amount paid to FPH in interest; and finally, if there were any funds left over, FPH and 22nd Century would split them evenly. In the event the property sale did not yield enough profit to cover FPH's investment, 22nd Century was required to make up the difference, with Damerau guaranteeing this obligation.

Pursuant to the agreement, 22nd Century presented FPH with pro formas for three properties, all of which FPH approved. For the first two properties ("Properties 1 and 2"), FPH agreed to invest $150,000 each, eventually receiving—based on appellants' "final accounting"—respective profits of $55,349.00 and $58,353.04. As to the third property ("Property 3"), FPH invested $400,000. However, appellants never sold the property, and thus claimed they did not need to reimburse FPH for anything other than its contributed capital. As it turned out, Damerau resided in Property 3 and claimed it as his personal homestead.

## Procedural Posture

After noticing discrepancies between the pro formas, HUD settlement statements, and "final accountings" submitted for Properties 1 and 2, FPH filed suit against appellants, initially alleging counts for inspection of books and records, accounting, breach of agreement, and breach of fiduciary duty. After conducting discovery, FPH learned that appellants falsified the HUD settlement statements and other documents to increase 22nd Century's share of the profits and used the three properties as a mechanism to charge FPH for expenses unrelated to the properties. Additionally, FPH believed that appellants induced FPH to invest in Property 3 under the false pretense that it would be sold for profit, all the

while knowing Damerau would retain it for his personal residence. Based on what it had uncovered in discovery, FPH amended its complaint to include claims for punitive damages and fraud.

Through the discovery process, appellants' scheme unfolded like a peeled onion: each discovery request uncovered a new layer of the ploy. During the six-year period between the filing of the case and its August 2012 bench trial, FPH filed twenty-seven discovery-related motions, moved four times for contempt/sanctions, and twice amended its complaint to address newly discovered information. As the trial court explained in an order on FPH's motion for contempt and sanctions entered on August 30, 2012, the day before trial, the delay and complexity in the case stemmed from appellants' fraudulent or deceptive discovery tactics. The court rejected the drastic sanctions of default, the striking of pleadings, and contempt but went on to state that

> **this Court will not stand idly by and permit a party to file forged and fraudulent documents, to delay proceedings and to provide falsified responses to discovery requests. [Appellants] ha[ve] interfered with [FPH's] discovery in the matter, as well as this Court's ability to fairly adjudicate the pertinent issues.** While this Court, in no way, condones the actions of [the appellants,] Florida courts have long recognized that where a less restrictive alternative is available for assuring the fair trial guarantee and the use of the alternative does not unduly burden the expeditious disposition of the cause, the alternative procedure should be opted for. *Miami Herald Publishing Co. v. Lewis*, 426 So. 2d 1, 8 (Fla. 1982). Other remedies to [FPH] would include vigorous cross-examination of [the appellants] on their interrogatory and deposition responses. **As such, this Court finds that [FPH] is entitled to recover reasonable attorneys' fees for the extra work [it] had to undertake**.

(Emphasis added).

Following a bench trial, the trial court entered judgment in FPH's favor, finding appellants jointly and severally liable for $1,524,087.11 in damages on account of fraud, breach of fiduciary duty, and breach of contract. The trial court further determined that appellants were liable for punitive damages, although it did not set an amount. In its order, the trial court explained its ruling by stating that the appellants failed to provide FPH with any documents relating to the properties that substantiated the amount actually paid for acquiring and developing the properties. As to

the three properties, the order stated appellants damaged FPH by not selling Property 3 and caused further injury by "creat[ing] fictitious contracts, settlement statements and distribution statements which were intended to and did defraud FPH from its rightful share of the [venture's] profits" regarding Properties 1 and 2. This Court affirmed the final judgment without opinion. *See 22nd Century Props., LLC v. FPH Props., LLC,* 145 So. 3d 858 (Fla. 4th DCA 2014).

## *Attorney's Fees Hearing*

Following the final judgment, FPH moved for attorney's fees and prejudgment interest pursuant to its prior demands for judgment. In October 2010, two years before the bench trial, FPH served the appellants with a demand for judgment pursuant to section 768.79, Florida Statutes (2006), offering to settle the case for $1,000,000.00. In the offer, FPH agreed not only to resolve all claims between the parties but also to dismiss its "pending Motion for Leave to Amend Complaint to Add a Claim for Punitive Damages." November 2011 and July 2012 demands for judgment specifically addressed the punitive damages count.

In its motion, FPH requested $660,756.50 in attorney's fees based upon 2,362.60 attorney hours and 203 paralegal hours over an 84-week period. Since the appellants contested this amount, the trial court addressed the matter via evidentiary hearing.

### *FPH's Evidence*

At the evidentiary hearing, FPH focused its case on the expert testimony of Joshua Spector, an attorney who reviewed the case file. Spector characterized the case as voluminous, as evidenced by "19 boxes of pleadings" resulting in "an inordinate number of wins for the judgment creditor, and losses for the judgment debtor." After reviewing in excess of 1600 discreet billing entries, Spector found FPH's fees request reasonable "given the rather incredible nature of th[e] case and the breadth and depth of misrepresentations by the" appellants. However, Spector did opine that FPH's requested fees should be reduced for certain attorney hours that "could have been spent by a paralegal." Further, he reduced the fee amount by five percent for FPH's unsuccessful appellate proceedings, where it opposed the removal of a predecessor judge by a writ of prohibition. Ultimately, this court found in appellants' favor and granted the writ.

In justifying the attorney's fee award, Spector described the case as particularly "complex" and "very difficult . . . to prosecute," as it involved

numerous rounds of discovery, "more than 125 subpoenas to third parties," and 95 potential trial witnesses "to contend with the misrepresentations put on by" the appellants. Such "an inordinate amount of work," in Spector's opinion, derived not from FPH's overzealousness but from the appellants' "vast and complicated misrepresentations," which necessitated that FPH's lawyers locate "an incredible number of fact witnesses, or potential fact witnesses, many of whom [it] turned out had nothing to do with the development." As Spector explained, when one "erect[s] a fraudulent artifice, such as [occurred in this case,] it's going to cause a lot of work."

On cross-examination, appellants attempted to establish through Spector that FPH's legal work was duplicative and excessive. For example, given the circumstances of the case, Spector did not believe deposing Damerau more than ten times was excessive since Damerau "laid out several layers of misrepresentations, not only in discovery, but also to the Court." Therefore, as discovery proceeded and more misrepresentations were unearthed, it was reasonable to take additional discovery—if the depositions were unduly duplicative or taken to harass, the appellants "could have moved for protective orders or otherwise prevented that discovery." Spector's notions were echoed by FPH's attorney of record, Benjamin Olive, and his associate, Kara Strochlic, who both testified to the necessary nature of the depositions taken in the case.

In a similar vein, appellants asked Spector why he believed FPH should recover fees for the time expended on FPH's count seeking an accounting, on which it did not prevail. Spector explained that the accounting action was interrelated with the other causes of action that were developed through discovery; one purpose of an accounting is to acquire information that can give birth to other legal theories of recovery.

Another area of cross-examination was the $24,000 spent to craft a witness list. Spector testified that compiling a witness list involved more than typing names—counsel had to formulate a trial strategy and identify the best witnesses to implement that strategy, which required consideration of many factors. An associate attorney later explained that the witness list's complexities arose because Darameu "produced . . . three expense sheets, which had over a hundred different non-parties [that] were expenses relating to the three properties." In addition, FPH listed a great number of potential witnesses because appellants initially asserted over twenty affirmative defenses—it was not until just prior to trial that appellants' counsel abandoned this "litany of arguments."

*David Damerau*

To combat Spector's testimony, appellants called Damerau himself to shed light on the nature of the depositions taken and discovery requested. Damerau testified that he was deposed by FPH's prior counsel four to five times "pretty thorough[ly]" and that he provided prior counsel with requested discovery. Nevertheless, FPH's current lawyers decided to depose him over ten additional times.

While admitting that appellants' disclosures were not always accurate, Damerau blamed such inaccuracy on the fact that his "accountant had died at the time, and [he] had to figure out how [he] was going to" get all the records. Nevertheless, Damerau was adamant that appellants "provided all the discovery that was actually used at trial," and that FPH's additional discovery "was more of a harassment overbilling abusive process." To support this contention, he contrasted the $175,000 he had paid his attorneys over the six years of litigation with appellee's request for over $600,000.

### The Trial Court's Order

On August 23, 2013, the trial court entered a final order awarding FPH $631,969.50 in attorney's fees for the period between October 13, 2010 and August 30, 2012. The order also entitled FPH to recover, as a taxable cost, $6,240.00 for its expert witness. The court justified the ruling by referring to the findings in the August 30, 2012 order quoted above that Damerau had "interfered with" discovery by filing "forged and fraudulent documents[] to delay proceedings." The court pointed out that FPH was entitled to recover for the extra work caused by appellants' misconduct. The court reduced FPH's request by $28,787.00 "due to removal of certain duplicative time on motions, hearings, depositions, and other tasks that were not apparently critical to the overall strategy and prosecution of this case, as well as a reduction in fees logged by attorneys for work which reasonably could have been performed by a paralegal."

### The trial judge did not abuse his discretion in the award of attorney's fees

Appellants assert the trial court's attorney's fee award amounted to an abuse of discretion because of excessive, duplicative, or unnecessary billings included in the judgment. Since this issue involves the calculation of attorney's fees, our review is for an abuse of discretion. *See Glantz & Glantz, P.A. v. Chinchilla,* 17 So. 3d 711, 713 (Fla. 4th DCA 2009).

Section 768.79, Florida Statutes (2006), "provides the basis for an award of attorney's fees and costs when an offer or demand for judgment is not accepted and the statutory calculation formula is met." *Wolfe v. Culpepper Constructors, Inc.,* 104 So. 3d 1132, 1133 (Fla. 2d DCA 2012) (footnote omitted); *Willis Shaw Exp., Inc. v. Hilyer Sod, Inc.,* 849 So. 2d 276, 278 (Fla. 2003). For a plaintiff to secure an award under the statute, two conditions must be shown: (1) that the plaintiff filed an offer of judgment that was not accepted by the defendant within thirty days, and (2) that the final judgment was at least twenty-five percent greater than the plaintiff's offer to the defendant. *See Se. Floating Docks, Inc. v. Auto-Owners Ins. Co.,* 82 So. 3d 73, 79 (Fla. 2012). The mechanism's purpose is to encourage "litigants to settle by penalizing those who decline offers." *MGR Equip. Corp., Inc. v. Wilson Ice Enters., Inc.,* 731 So. 2d 1262, 1264 (Fla. 1999).

Where entitlement to attorneys' fees award is warranted, the "lodestar" method embraced in *Florida Patients Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), "sets forth the method that trial courts use for calculating a reasonable attorney's fee." *Genser v. Reef Condo. Ass'n*, 100 So. 3d 760, 761 (Fla. 4th DCA 2012). Under the lodestar method, trial courts are required

> to determine a "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney. [*Rowe*, 472 So. 2d at 1151]. The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. *Id.* at 1150–51; *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

*Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010). To reach the "lodestar figure," the trial court must consider the factors listed in Rule 4-1.5 of the Rules Regulating the Florida Bar. *See Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 830 & n.3 (Fla. 1990).

The first step in the lodestar determination is to calculate the number of hours reasonably expended on the litigation. *See State, Dep't. of Transp. v. Skinners Wholesale Nursery, Inc.*, 736 So. 2d 3, 7 (Fla. 1st DCA 1998). When making this determination, "[f]ee applicants are expected to exercise 'billing judgment,' and, if they do not, 'courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.'" *PNC*

*Bank, N.A. v. Starlight Props. & Holdings, LLC*, No. 6:13-cv-408, 2014 WL 2574040, at *11 (M.D. Fla. June 9, 2014) (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)). If the billing records appear otherwise reasonable, "the opponent of the fee has the burden of pointing out with specificity which hours should be deducted." *Centex-Rooney Constr. Co. v. Martin Cnty.*, 725 So. 2d 1255, 1259 (Fla. 4th DCA 1999). "Accordingly, a fee opponent's failure to explain exactly which hours [the opponent] views as unnecessary or duplicative is generally viewed as fatal." *Scelta v. Delicatessen Support Servs. Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002).

In this case, the appellants' brief cites eleven examples of double billing and excessiveness. Noticeably absent from the appellants' string of examples are record citations. This is because, as FPH points out, few of these asserted billing discrepancies were contested below. In fact, when the appellants *did* challenge billings at the hearing, they did so in an overly generalized fashion. For example, in contesting the $24,000 of fees for "preparation of just the witness lists for trial," appellants asked the following question to FPH's counsel, "Do you think a figure exceeding $24,000, or – would that be excessive in creation of a witness list?" Such a broad question is insufficient to discharge the specificity requirements for contesting asserted fees, as it provides little guidance to the trial court regarding what specific billings the opponent is contesting. Appellants failed to break down the charge into its unreasonable components.

The problem with appellants' challenge to the fee award on appeal is that much evidence supports the view that they caused the elevated bill. The theme of the fee hearing centered upon the extensive scope of Damerau's fraudulent activity, which caused FPH to jump through many hoops to complete discovery. While multiple depositions may often be overly excessive, FPH demonstrated that its actions were performed not to harass, but to better develop the contours of Demerau's scheme as it came to light during discovery. FPH created an extensive witness list, and took great pains to prepare for trial, because the unwieldy case evolved over time; for example, it was only the day before trial that appellants informed FPH that it was abandoning several affirmative defenses. Given the voluminous nature of the case, the extent of Damerau's fraudulent activity, and its impact on discovery, it cannot be said the trial court abused its discretion in its evaluation of the *Rowe* factors.

***The trial court did not abuse its discretion by not reducing FPH's attorney's fee award for time spent on the accounting claim upon which it did not prevail***

Appellants attack the trial court's failure to reduce FPH's attorney's fee award by any time spent on the accounting since "no [a]ccounting was requested and no [a]ccounting was ordered." The accounting count arose from the same common core of facts as the actions at law upon which FPH prevailed. FPH recovered the full amount of damages it sought. Because the accounting was inextricably intertwined with establishing damages on the actions at law, the trial court did not err in failing to eliminate time spent on the accounting from the attorney's fee award.

"[T]he party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." *River Bridge Corp. v. Am. Somax Ventures*, 76 So. 3d 986, 989 (Fla. 4th DCA 2011) (citing *Lubkey v. Compuvac Sys., Inc.*, 857 So. 2d 966, 968 (Fla. 2d DCA 2003)). Issues are "inextricably intertwined" or involve a "common core of facts" when "'work for one claim cannot be distinguished from work on other claims.'" *Miller v. Miller*, 107 So. 3d 430, 433 (Fla. 4th DCA 2012) (quoting *Franzen v. Lacuna Golf Ltd. P'ship*, 717 So. 2d 1090, 1093 (Fla. 4th DCA 1998)); *Schoenlank v. Schoenlank*, 128 So. 3d 118, 121 (Fla. 3d DCA 2013). "Conversely, 'claims are separate and distinct when they could support an independent action and are not simply alternative theories of liability for the same wrong.'" *Effective Teleservices, Inc. v. Smith*, 132 So. 3d 335, 339 (Fla. 4th DCA 2014) (quoting *Avatar Dev. Corp. v. DePani Constr., Inc.*, 883 So. 2d 344, 346 (Fla. 4th DCA 2004)). "Thus, for example, where a particular claim is subject to a fee entitlement but one or more related claims are not, 'time spent marshaling the facts' of the related claims is compensable because it 'likely would have been spent defending any one or all of the counts.'" *Durden v. Citicorp Trust Bank, FSB*, 763 F. Supp. 2d 1299, 1306 (M.D. Fla. 2011) (quoting *Caplan v. 1616 E. Sunrise Motors, Inc.*, 522 So. 2d 920, 922 (Fla. 3d DCA 1988)).

Another primary focus for this determination is the significance of the overall relief obtained. *See Centex-Rooney Constr. Co.*, 725 So. 2d at 1260. As our nation's high court explained in *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983):

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired

outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.

(Internal citation and footnote omitted).

In this type of business litigation case, an accounting can be an equitable tool that allows an aggrieved plaintiff to follow the money and develop other theories of recovery. The accounting claim was an equitable alternative for recovering misappropriated funds had the actions at law failed. At its core, an accounting is "[a]n action for equitable relief against a person in a fiduciary relationship to recover profits taken in a breach of the relationship." Black's Law Dictionary 21 (8th ed. 2004). "[T]he first principle of equity jurisdiction is that equity follows the law." *Fla. High Sch. Athletic Ass'n v. Melbourne Cent. Catholic High Sch.*, 867 So. 2d 1281, 1291 (Fla. 5th DCA 2004). Thus, while "law and equity often ha[ve] concurrent jurisdiction in matters concerning fiduciaries," *King Mountain Condo. Ass'n v. Gundlach*, 425 So. 2d 569, 571 (Fla. 4th DCA 1982), "[e]quity will not act when there is a remedy at law." *Jackson v. Computer Sci. Raytheon*, 36 So. 3d 754, 756 (Fla. 1st DCA 2010).

Here, the purpose of FPH's action was to recover the money taken by appellants' fraud. All the causes of action required that money from the business venture be traced, so that the accounting was inextricably intertwined with the causes of action for which FPH recovered damages. FPH prevailed upon substantial actions at law—breach of contract and fraud—making recovery under its accounting claim unnecessary. Since FPH obtained a most "excellent" result and the facts underlying the accounting claim entirely overlapped with the claims that prevailed, the trial court did not abuse its discretion by awarding FPH for time spent on the accounting cause of action.

We have considered the remaining arguments raised and find no error.

*Affirmed.*

TAYLOR and GERBER, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***